STATE of Tennessee

v.

Bobby James MOSLEY, Jr.

Court of Criminal Appeals of Tennessee, at Nashville.

Assigned on Briefs at Knoxville
July 26, 2005.

Nov. 17, 2005.

Application for Permission to Appeal
Denied by Supreme Court
March 27, 2006.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Bobby James Mosley, Jr.

Paul G. Summers, Attorney General & Reporter; Benjamin A. Ball, Assistant Attorney General; and Weakley E. Bernard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. McLINN, JJ., joined.

The defendant, Bobby James Mosley, Jr., was convicted of aggravated robbery, a Class B felony. *See* Tenn.Code Ann. § 39–13–401(a), –402(a)(1) (2003). The trial court imposed a Range I, twelve-year sentence. In this appeal, the defendant asserts that the trial court erred by (1) limiting the direct examination of the defendant; (2) barring him from the courtroom; and (3) striking his testimony from the record. The judgment of the trial court is affirmed.

In 2003, the victim, Danny Reeves, was closing the McDonald's Restaurant in Lewisburg where he worked as manager. As he locked the restaurant doors, an armed individual appeared and asked him if he was "ready to die." The assailant took the victim's briefcase, which consisted of approximately five thousand dollars in restaurant receipts, and his wallet, which consisted of approximately one thousand

dollars. The victim, who was directed to lie on the ground and count slowly to one hundred, counted to twenty-five before realizing that his assailant had left. He then called for assistance.

Several police officers converged on the scene and found the defendant in a nearby field. As he attempted to flee, the defendant discarded a briefcase. Police found three thousand dollars in his pants and underwear. In a search of the defendant's car, police later found the victim's wallet and the clothing the defendant had worn during the robbery. Prior to his own trial, the defendant elected to testify in a co-defendant's trial. The co-defendant was acquitted.

Because of a conflict of interest, the public defender withdrew from representing the defendant. Afterward, the trial court granted the motion of his subsequent counsel, N. Andy Myrick, to withdraw. The defendant refused to cooperate with Attorney Myrick, alleging that he had conspired to conceal the existence of a prior verdict of acquittal of the aggravated robbery charge. The defendant's third lawyer, Hershel D. Koger, also moved to withdraw. He reported that he felt threatened by the defendant and did not think that the defendant was cooperating in trial preparations. The trial court, which denied the motion in order to avoid delay in the trial, conducted several hearings on these and other pre-trial motions, during which the defendant became disruptive. In those proceedings, the defendant repeatedly addressed the trial judge directly rather than through counsel, despite having been repeatedly instructed to do otherwise. The record indicates that at one point, the defendant waived papers over his attorney's head during the hearings and dared the trial judge to hold him in contempt. During the pre-trial proceedings, the defendant was found to be in

contempt of court five times and was removed from the courtroom on four separate occasions.

The record reflects that the defendant was vocal and disruptive throughout voir dire of the jury. During a bench conference, he was admonished by the trial court for speaking so loudly that the prospective jurors overheard his comments. When he pointed at the trial judge, he was again admonished. As the trial began, the defendant again disrupted the proceedings. After asking to make his own opening statement, the defendant then sought permission to represent himself during the trial. Explaining that he should have raised that issue prior to trial, the trial court denied his motion. Just prior to the opening statement, the defendant was admonished for speaking to his attorney so loudly that he could be heard by members of the jury. The trial judge then explicitly warned the defendant of the consequences of continued disruptions: "I am warning you that if you disrupt these proceedings on a continual basis, I will remove you from this courtroom; and we will proceed without you." Apparently, there were no other disruptions during the presentation of the state's evidence; however, when called to testify during the presentation of the defense, the defendant's responses were frequently well beyond the scope of the questions asked. Objections by the state to his responses were sustained. He persisted in offering the testimony, despite rulings that the information was irrelevant. When the state lodged a third objection to the repetitious and irrelevant testimony, which was non-responsive to his own counsel's questions, the trial court excused the jury and warned the defendant that "if he persists in volunteering [irrelevant] information ... then he will be waiving his right to present his relevant testimony to the jury." The trial court administered a further admonition as follows:

Mr. Mosley, you will respond to the questions asked. You will not point at the district attorney general nor make any statements that are not in answer to a question that is posed to you. This is the third warning … given to you during this trial. If you want to remain in this courtroom, you will follow orders of the [c]ourt. Else, I will have you removed from the courtroom.

During cross-examination by the assistant district attorney, the following exchange took place:

Q: When before this did you let her borrow the car?

A: I find it real hard to sit up here and do this. Knowing what you done to me, man, and what you are doing and what you are keeping from these jurors. I can't do it.

THE COURT: Mr. Mosley.

THE WITNESS: I can't do it.

THE COURT: Please, answer the questions of the district attorney general.

THE WITNESS: I can't sit up here knowing you withheld the verdict from—

THE COURT: Mr. Mosley.

THE WITNESS: I can't.

THE COURT: You will answer the questions of the lawyer that is propounded to you.

THE WITNESS: I can't do it. I can't answer questions knowing what he did, how you changed the paper work so you can do this fake trial.

THE COURT: You may refuse to answer the question if you want to.

THE WITNESS: How can you do that, man?

THE COURT: Mr. Mosley. Mr. Mosley, can you hear me?

THE WITNESS: This is wrong. This is wrong.

THE COURT: Send the jury out.

(The jury left the courtroom.)

THE WITNESS: It is wrong. It is double jeopardy. They are withholding a verdict.

THE COURT: Send the jury out, please.

THE WITNESS: This is wrong, man. This is wrong. [Y'all] know this is wrong. Trying to cover up their [wrongdoing]. You can't do this to people, man.

You can't do this to people. I can't sit up here and listen to this man sitting up here knowing what he done and how you all changed the paper work like it is. Okay? [Y'all] can send me up—

THE COURT: Remove the Defendant from the courtroom.

THE WITNESS: Let's go.

THE COURT: Place him in the holding area.

When the assistant district attorney general moved to strike the defendant's testimony in its entirety, the trial judge explained that he would first allow the defendant "to cool his heels for a moment" to determine whether he would cooperate with further cross-examination.

When the defendant was returned to the courtroom, the trial judge explained that if he did not complete the cross-examination, the jury would be instructed to disregard all of his testimony. He added that another outburst would result in his removal from the courtroom. When the defendant assured the trial judge that he would "try to be on [his] best behavior," the jury returned to the courtroom. Despite those assurances, the defendant continued to be uncooperative, refusing to answer the questions asked of him during cross-examination. An exchange between the trial judge and the defendant culminated as follows:

THE COURT: Mr. Mosley, I have asked you again not to make any statements unless a question is being asked of you. I have told you what I am prepared to do if you don't follow—

THE WITNESS: Yeah. You threatened me real good. I am real scared, too.

The defendant was again removed from the courtroom and the jury was excused. Shortly thereafter, the judge pointed out that the permanent removal of a defendant from a criminal trial was an "extremely drastic" measure; he warned that he would nevertheless impose the sanction if the defendant continued to refuse to answer questions or had another outburst. The defendant responded, "Judge, I will cooperate."

During a resumption of cross-examination, the defendant answered several of the state's questions. When, however, an objection by defense counsel was overruled, the defendant commented, "Ask the question again. We are getting to know about you and him and him, too," apparently referring to the assistant district attorney, defense counsel, and the trial judge. The defendant made a gesture toward the trial judge, the jury was removed from the courtroom, and the defendant was cited for contempt. The trial court granted the state's motion to strike the defendant's testimony and ordered the removal of the defendant for the remainder of the trial. Defense counsel did not call any other witnesses. Closing arguments were presented and the jury, after only twenty minutes of deliberations, returned a verdict of guilty to the charge of aggravated robbery.

In this appeal, the defendant contends that the trial court erred by limiting the direct examination of the defendant, by barring the defendant from the courtroom, and by striking the defendant's testimony from the record. The state contends that the trial court properly limited the evidence presented by the defendant pursuant to the rules of evidence; that the trial court properly barred the defendant from the courtroom pursuant to Rule 43 of the Tennessee Rules of Criminal Procedure, which governs the presence of the defendant in a criminal trial; and that the trial court properly struck the testimony pursuant to case law requiring trials to be fair and orderly.

### I.

■ The first issue is whether the trial court erred by denying the defendant an opportunity to establish a "personal theory of defense." Phrasing this issue differently, the defendant asks, "Who is in charge of the presentation of the case at trial, the defendant through his counsel or counsel?" The defendant cites *Zagorski v. State*, 983 S.W.2d 654 (Tenn.1998), extensively in his brief; however, the single issue presented for review in that case was "whether there is ineffective assistance of counsel where, at the express instruction of a competent and fully informed defendant, defense counsel does not investigate or present mitigating evidence at the sentencing phase of a capital trial." 983 S.W.2d at 655.

The state contends that the defendant's reliance on *Zagorski* is misplaced and argues that the trial court has broad discretion to control the admission of evidence and the arguments of counsel. It submits that the issue is whether the trial court properly limited the defendant's testimony on relevancy grounds.

The ruling in *Zagorski* is not helpful. Indeed, no claim of ineffective assistance of counsel has been made. Even if the defendant's claim could be interpreted as one of deficient counsel, this court has consistently "warned defendants and their

counsel of the dangers of raising the issue of ineffective assistance of trial counsel on direct appeal because of the significant ... amount of development and factfinding such an issue entails." *Kendricks v. State,* 13 S.W.3d 401, 405 (Tenn.Crim.App.1999). Raising the issue of ineffective assistance of counsel on direct appeal is "a practice fraught with peril." *State v. Jimmy L. Sluder,* No. 1236, slip op. at 16, 1990 WL 26552 (Tenn.Crim.App., at Knoxville, Mar. 14, 1990). The defendant runs the risk of having the issue resolved "without an evidentiary hearing which, if held, might be the only way that harm could be shown—a prerequisite for relief in ineffective trial counsel claims." *Jimmy Wayne Wilson v. State,* No. 909, slip op. at 10, 1991 WL 87245 (Tenn.Crim.App., at Knoxville, May 29, 1991). The better practice is to make an ineffective assistance of counsel claim in a post-conviction proceeding. *Sluder,* No. 1236, slip op. at 16.

█ In our view, the issue is whether the trial court properly curtailed the defendant's testimony on evidentiary grounds. Generally, the admission of evidence is a matter entrusted to the sound discretion of the trial court, and a trial court's ruling on an evidentiary matter will not be reversed absent abuse of that discretion.[1] *State v. Robinson,* 146 S.W.3d 469, 490 (Tenn.2004) (citing *State v. DuBose,* 953 S.W.2d 649, 652 (Tenn.1997)). On appeal, "[t]he abuse of discretion standard contemplates that before reversal the record must show that a judge 'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.' " *State v. Coley,* 32 S.W.3d 831, 833 (Tenn.2000) (quoting *State v. Shirley,*

6 S.W.3d 243, 247 (Tenn.1999)); *see also State v. Shuck,* 953 S.W.2d 662, 669 (Tenn. 1997).

"Relevant evidence" is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would have been without the evidence." Tenn. R. Evid. 401. In *State v. Forbes,* 918 S.W.2d 431 (Tenn. Crim.App.1995), this court discussed the standard of review on appeal after a determination of relevancy:

"Because an assessment of whether a piece of evidence is relevant requires an understanding of the case's theory and other evidence as well as a familiarity with the evidence in question, appellate courts give great deference to a trial judge's decision on relevance issues. Often it is stated that a trial court's decision on relevance will be reversed only for an abuse of discretion...."

918 S.W.2d at 449 (quoting Neil P. Cohen et. al., Tennessee Law of Evidence § 401.5 (2d ed.1990)).

█ Tennessee Rule of Evidence 611(a) provides that a trial court "shall exercise appropriate control over the presentation of evidence and conduct of the trial when necessary to avoid abuse by counsel." Tenn. R. Evid. 611(a). In Tennessee, it is also "well-settled that the propriety, scope, manner and control of the examination of witnesses is a matter within the discretion of the trial judge, subject to appellate review for abuse of discretion." *State v. Caughron,* 855 S.W.2d 526, 540 (Tenn. 1993); *see also Smith v. State,* 527 S.W.2d 737, 739 (Tenn.1975) ("[T]rial judges have

---

1. Donald F. Paine, adjunct professor at the University of Tennessee College of Law and reporter to the Tennessee Supreme Court Advisory Commission on Rules of Practice and Procedure, has criticized the "sound discre-

tion of the trial court" standard, arguing that the admission of evidence is strictly governed by the Tennessee Rules of Evidence. Donald F. Paine, *Evidentiary Nonsense,* Tenn. Bar Journal, June 2005, at 15.

wide discretion in controlling the argument of counsel, and their action will not be reviewed absent abuse of that discretion.")

Here, the trial court limited the defendant's testimony as to his theory that a general sessions judge, the office of the district attorney general, a detective, the trial judge, the victim, and even his own defense lawyers were involved in a conspiracy to hide the fact that the defendant had previously been tried and acquitted of the charges he faced at this trial. The defendant sought to establish that some testimony and several documents had been fabricated during the separate trial of his co-defendant. The trial court sustained the state's relevancy and hearsay objections but allowed the defendant to make an offer of proof. With regard to the defendant's claim that his former attorney intentionally withheld evidence, the trial court ruled the testimony was irrelevant and that any deficiency of prior counsel was cured by the appointment of counsel representing him at trial.

In our view, the trial court acted within its discretion in limiting the testimony of the defendant. The proffered testimony did not have any bearing on any fact that pertained to his guilt or innocence, and would have only served as a comment on the performance of his previous defense counsel and as his interpretation of the development at a co-defendant's trial. The testimony was not relevant to whether the defendant committed the armed robbery and was thus properly limited pursuant to the Tennessee Rules of Evidence. *See* Tenn. R. Evid. 401. Although the defendant was entitled to present a defense, the presentation of any defense must comport with the rules of evidence.

## II.

■ The defendant next contends that the trial court erred by permanently re-moving him from the courtroom during the trial. The state argues that the defendant has waived consideration of the issue by failing to include the ground in his motion for a new trial and that, in any case, the trial court acted properly in removing the defendant from the courtroom.

Generally, the failure to raise an issue in a motion for a new trial results in a waiver. Rule 3(e) of the Tennessee Rules of Appellate Procedure provides that for appeals "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, ... or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R.App. P. 3(e); *see also State v. Martin,* 940 S.W.2d 567, 569 (Tenn.1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial). Whether properly assigned or not, however, this court may consider plain error upon the record. *State v. Ogle,* 666 S.W.2d 58, 60 (Tenn. 1984).

Before an error may be recognized as "plain" pursuant to Rule 52(b) of the Tennessee Rules of Criminal Procedure, the error must "affect[ ] the substantial rights of an accused." Tenn. R.Crim. P. 52(b). " 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.' " *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Plain error is not merely error that is conspicuous. Plain error is especially egregious error that strikes at the "fairness, integrity, or public reputation of judicial proceedings." *Momon v. State,* 18 S.W.3d 152, 157 (Tenn.1999) (quoting *Manning v. State,* 500 S.W.2d 913, 914 (Tenn.1973)); *see also State v. Wooden,* 658 S.W.2d 553, 559 (Tenn.Crim. App.1983). In *State v. Adkisson,* 899

S.W.2d 626 (Tenn.Crim.App.1994), this court defined "substantial right" as "a right of 'fundamental proportions in the indictment process, a right to the proof of every element of the offense, and ... constitutional in nature.'" *Id.* at 639 (quoting *State v. David L. Hassell,* slip op. at 11, 1992 WL 386311 (Tenn.Crim.App., at Jackson, Dec. 30, 1992)). In that case, this court established the following five factors to be applied in determining whether an error is "plain":

> (a) the record must clearly establish what occurred in the trial court;
>
> (b) a clear and unequivocal rule of law must have been breached;
>
> (c) a substantial right of the accused must have been adversely affected;
>
> (d) the accused did not waive the issue for tactical reasons; and
>
> (e) consideration of the error is "necessary to do substantial justice."

*Id.* at 641–42 (footnotes omitted). The *Adkisson* test was formally adopted by our supreme court, which characterized the test as a "clear and meaningful standard" and emphasized that all five factors must be established before a trial error will be considered as plain error. *State v. Smith,* 24 S.W.3d 274, 282–83 (Tenn.2000).

■ A defendant has a fundamental right under both the federal and state constitutions to be present during his trial. *State v. Muse,* 967 S.W.2d 764, 766 (Tenn. 1998); *State v. Richard M. Far, Jr.,* No. M1999–01998–CCA–R3–CD, slip op. at 3, 2001 WL 208513 (Tenn.Crim.App., at Nashville, Mar. 1, 2001). Rule 43(a) of the Tennessee Rules of Criminal Procedure also gives a defendant the right to be present at trial:

> (a) *Presence Required.* Unless excused by the court upon defendant's motion, the defendant shall be present at the arraignment, at every stage of the trial including impaneling of the jury

and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

Tenn. R.Crim. Pro. 43(a); *see also Crosby v. United States,* 506 U.S. 255, 262, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993) (interpreting Federal Rule of Criminal Procedure 43, which is similar to our state's rule, as prohibiting the trial in absentia of a defendant who is not present at the beginning of trial). The scope of this rule is broader than the constitutional right alone because the rule "embodies the protections afforded by the Confrontation Clause of the Sixth Amendment, the right to be present derived from the Due Process Clause[s] of the Fifth and Fourteenth Amendments, and the common law privilege of presence." *Muse,* 967 S.W.2d at 767. "Presence at 'trial' means that the defendant must be 'present in court from the beginning of the impaneling of the jury until the reception of the verdict and the discharge of the jury.'" *Id.* at 766 (quoting *Logan v. State,* 131 Tenn. 75, 78, 173 S.W. 443, 444 (1914)).

■ The right of an accused to be present throughout the proceedings may, however, be waived by the defendant, voluntarily or involuntarily. Rule 43(b) provides in relevant part as follows:

> (b) *Continued Presence Not Required.* The further progress of the trial to and including the return of the verdict and imposition of sentence shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present:
>
> . . . .
>
> (2) After being warned by the court that disruptive conduct will cause the defendant to be removed from the courtroom, persists in conduct which is such as to justify exclusion from the court-

room. If ... the defendant has been removed from the courtroom, he or she shall be given reasonable opportunity to communicate with counsel during the trial. If a trial is proceeding with the defendant excluded from the courtroom because of disruptive conduct, the court shall periodically determine at reasonable intervals whether the defendant will then signify willingness to avoid creating a disturbance if allowed to return to the courtroom and shall permit such return when the defendant so signifies and the court reasonably believes the defendant.

Tenn. R.Crim. P. 43(b).

In this case, the record reflects that the defendant was present when the jury selection began, when the jurors were sworn, and when opening statements were delivered. The initial disruption was just prior to the opening statement of the defendant. The most serious disruptions, however, did not occur until near the end of the trial when the defendant was called as the last witness. Despite numerous warnings, the defendant repeatedly offered non-responsive answers to the questions of his own counsel and provided testimony that was not relevant to the proceedings. During cross-examination, the defendant refused to cooperate, arguing that he could no longer tolerate "this fake trial." The defendant was given the opportunity to regain his composure and was repeatedly warned that another outburst would result in his removal from the courtroom without the opportunity to complete his testimony, a development that would result in his entire testimony being stricken from the record and withdrawn from consideration by the jury. After assurances to the contrary, the defendant persisted in his misbehavior and taunted the trial judge. Despite another recess and assurances by the defendant that he would cooperate, the defendant again disrupted the proceedings and made an overt gesture, which the trial

judge deemed offensive. It was only then that the defendant was cited for contempt of court and removed from the courtroom for the final time.

In *State · v. Ford,* No. W2000–01205–CCA–R3–CD, 2002 WL 1592746 (Tenn. Crim.App., at Jackson, July 12, 2002), Ford repeatedly made comments directly to the jurors, complaining on several occasions that his attorneys were not representing him adequately. Before the first witness was called, he exclaimed, "The Court's forcing me to go to trial. My attorneys are against me.... They haven't even contacted my witnesses.... I'm not ready to go to trial." In a jury-out hearing, the judge instructed the defendant that further outbursts would result in either his exclusion from the courtroom or his being bound and gagged for the duration of the trial. Ford assured the court, "That's all I had to say." Upon the jury's return, however, he made similar complaints. Another warning was followed by another outburst and the defendant was excluded from the courtroom. This court upheld the conviction, holding that the trial court complied with Rule 43.

In this case, the trial court did not err by removing the defendant from the courtroom. Indeed, the trial judge exercised restraint in the conduct of the trial. After two detailed admonitions and a third outburst by the defendant, the trial court had little choice. In our view, the trial court acted within its discretionary authority by removing the defendant from the trial. *See* Tenn. R.Crim. P. 43(b)(2) (stating that a trial court shall permit a defendant to return to the courtroom if the defendant signifies willingness to avoid creating a disturbance and the court reasonably believes the defendant); *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) ("[A] defendant can lose his

right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.").

## III.

■ The defendant's final contention is that the trial court erred by striking his testimony from the record. The state asserts that the trial court was required to utilize this extraordinary measure because the defendant's unruly behavior and eventual exclusion from the courtroom foreclosed the possibility of a meaningful cross-examination. This is an issue of first impression in this jurisdiction.

■ A defendant has a fundamental right to testify in his own trial. Tenn. Const. art. 1, § 9 ("That in all criminal prosecutions, the accused hath the right to be heard by himself. . . ."); *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (holding that the defendant's right to testify is guaranteed by the 5th, 6th, and 14th Amendments to the U.S. Constitution). The defendant's right to testify, however, is not an unqualified right. For instance, there is no right to commit perjury. *United States v. Grayson,* 438 U.S. 41, 54, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). Also, all testimony must comport with the rules of evidence.

■ A defendant may waive his right to testify just as he may waive his right to be present at his trial. In *United States v. Ives,* 504 F.2d 935 (9th Cir.1974), *vacated on other grounds,* 421 U.S. 944, 95 S.Ct. 1671, 44 L.Ed.2d 97, (1975), *opinion reinstated in relevant part,* 547 F.2d 1100 (1976), the court held that the defendant waived his right to testify with his disruptive conduct. *Id.* at 941; *see also United*

*States v. Nunez,* 877 F.2d 1475, 1478 (10th Cir.1989) (noting that the defendant's right to testify may be waived by the defendant's disruptive behavior); *State v. Irvin,* 628 S.W.2d 957, 960 (Mo.Ct.App.1982) (stating that "[a] defendant has no more right to take the stand and 'testify in a way degrading to the judicial system than he has to rob a bank or to assault a constable'" (quoting *Ives,* 504 F.2d at 941)); *Ingle v. State,* 92 Nev. 104, 546 P.2d 598, 599 (1976) (recognizing that an "accused may waive the privilege [to testify] . . . by his actions"); *State v. Chapple,* 145 Wash.2d 310, 36 P.3d 1025, 1034 (2001) (holding that the defendant "waived both his right to be present at trial and his right to testify by refusing to properly conduct himself during trial"). In *Ives,* the defendant disrupted voir dire of prospective jurors, attacked his attorney and the U.S. Attorneys, uttered obscenities and argued with the trial judge in the presence of the jury, and disrupted the proceedings by banging and shouting from his holding cell beneath the courtroom. Despite repeated admonitions about the consequences of his disruptive conduct and despite several opportunities to be present during the proceedings, the defendant continued with his disruptive behavior and was ultimately prevented from returning to the courtroom and from presenting his testimony to the jury. The trial court held that the standard for determining whether the defendant had waived his privilege to testify was the same standard used to determine whether the defendant had waived his right to be present at his trial. *Id.* at 942. The court found that the defendant was appropriately warned of the consequences of his behavior and that the trial court did not err by precluding his testimony. *Id.*

Our supreme court has noted that "[i]t is the foremost responsibility of the trial

judge in a criminal action to insure a fair, just[,] and orderly trial." *State v. Burkhart,* 541 S.W.2d 365, 371 (Tenn.1976). Furthermore, in addition to the defendant's right to a fair trial, our high court has held that "[t]he [s]tate too has an interest in a fair trial." *Id.* In *State v. Burkhart,* our supreme court addressed the admissibility of an unsworn statement, holding that the defendant did not have a constitutional right to make the statement, based in part on the unfairness of the statement not being subject to cross-examination. *Id.*

In *Ives,* the court commented upon the amount of discretion that must be granted a trial court in determining whether a defendant has waived his right to testify:

> Since we must judge the evidence from a cold record, the appellate court is not in as good a position as the trial judge to determine the effect a defendant's disruptive conduct may have had on the proceedings. Even though facial expressions, gestures and other nonverbal conduct are often tremendously significant, they cannot be transcribed by the court reporter. Therefore, great deference must be given to the decision of the trial judge.

*Ives,* 504 F.2d at 942.

Here, the defendant was excluded from the *courtroom during the state's cross-*examination. The trial court had demonstrated considerable patience in its attempts to allow the defendant to complete his testimony. Much of the approximately forty-nine pages of substantive cross-examination found in the record consists of argumentative, non-responsive answers by the defendant. He continually asked improper questions of the prosecuting attorney and was repeatedly admonished by the trial court to answer the questions asked of him. The state had not concluded its cross-examination when the defendant was excluded from the courtroom. The assistant district attorney was stopped in the middle of a line of questioning concerning the defendant's actions immediately after his arrest.

Because his inappropriate behavior precluded a thorough cross-examination, the defendant was not entitled to the benefit of his testimony on direct examination. *Cf. Stapleton,* 638 S.W.2d 850, 855 (Tenn. Crim.App.1982) (citing *Harrison v. United States,* 392 U.S. 219, 222, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968)) (recognizing that once a witness has testified on direct examination, the witness is "bound to answer questions on cross[-]examination with respect to the testimony that he gave on direct"). In light of the circumstances of this case, the defendant's waiver of his right to be present equated to a waiver of his right to testify. *See, e.g., Ives,* 504 F.2d at 941–46; *State v. Chapple,* 36 P.3d at 1034. To hold otherwise would reward the defendant for his disruptive conduct by excusing him from cross-examination. Rule 43 of the Tennessee Rules of Criminal Procedure governs waiver by the defendant to be present at trial. In our view, the standard for determining whether a defendant has waived the right to be present at trial should be the same standard for determining whether the defendant has waived the right to testify. *See Ives,* 504 F.2d at 942. In consequence, the defendant's waiver of his right to be present at trial prior to offering full testimony, including cross-examination, necessarily constituted a waiver of his right to testify. The trial court did not err by striking the testimony of the defendant in its entirety.

Accordingly, *the judgment of the trial* court is affirmed.