# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 4, 2013

## STATE OF TENNESSEE v. TONY THOMAS

### Appeal from the Criminal Court for Shelby County
### No. 08-07876     Chris Craft, Judge

---

### No. W2012-00413-CCA-R3-CD  - Filed September 6, 2013

---

The defendant, Tony Thomas, appeals his Shelby County Criminal Court jury conviction of aggravated sexual battery, claiming that the evidence was insufficient to support his conviction and that he was deprived of the effective assistance of counsel at trial. Discerning no error, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JEFFREY S. BIVINS, JJ., joined.

Paul K. Guibao (on appeal); James DeRossit and Katherine DeRossit (at motion for new trial); and Claiborne Ferguson and Samuel Rodriquez (at trial), Memphis, Tennessee, for the appellant, Tony Thomas.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and Marianne Bell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On December 11, 2008, the Shelby County Grand Jury returned an indictment charging the defendant with aggravated rape for his attack on the victim on April 16, 2008. At trial, the victim testified that she had suffered from paralysis in her left leg since 1991 and that, because of this paralysis, she needed to walk with a cane. On the evening of April 16, 2008, the victim walked to the Family Barbecue Restaurant in Memphis at approximately 9:00 p.m. Upon arriving at the restaurant, the victim purchased two cheeseburgers that she ate while sitting on the tailgate of a truck. After the victim finished eating her cheeseburgers,

the defendant approached and asked if she wanted to purchase batteries, and the victim responded that she was not interested. After asking others near the victim if they wanted to purchase batteries, the defendant asked the victim if she wanted a ride home. The victim declined the defendant's offer of a ride, but he persisted. The victim testified that when she continued to resist his efforts, the defendant grabbed her by the back of the neck, shoved her inside his car, and told her to "get in the car, b****."

The defendant then got in the car, drove the victim to an empty house, and told the victim to get out of the car. When the victim refused, the defendant grabbed her by the hair and pulled her up the steps of the house, causing the victim to sustain scratches, bruises, and cuts. The victim testified that the defendant pulled her into a room of the house where a dirty mattress lay on the floor. The defendant then hit the victim in the head, face, legs, and elbows with both his fists and with a "blue top vodka bottle." The defendant threw the victim onto the mattress, held her down on her stomach, and first penetrated her mouth, then her rectum, and then her vagina with his penis. The assault continued for an hour to an hour and a half.

When the sexual part of the attack was over, the defendant told the victim to get in the car so he could take her back to the Family Barbecue Restaurant. He pulled the victim out of the house by the back of her neck, threw her on the ground outside, sat on top of her, and began to choke her. When the defendant stopped choking the victim, he picked up a concrete block. The victim begged the defendant not to throw the concrete block at her head, and he instead threw the concrete block on the ground. The victim then got in the defendant's car, and he drove her back to the Family Barbecue Restaurant.

Upon returning to the restaurant, the owner of the restaurant gave the victim a beer and called 9-1-1. When the police arrived, the victim gave them the license tag number of the vehicle the defendant was driving. Because one of the numbers was inaccurate, the police were unable to locate the defendant on the night of the attack. The defendant was arrested approximately three months later.

Memphis Police Department ("MPD") Officer Amanda Wakham testified that she and her partner responded to the Family Barbecue Restaurant at 12:38 a.m. The victim told Officer Wakham she had been raped, and the victim was "adamant that it was not a service call so to speak." Officer Wakham testified that the victim appeared very upset, and she observed markings, scratches, and bruises on the victim's neck and arms. She stated that she and her partner tried to persuade the victim to go to the Rape Crisis Center at the time of the initial call, but the victim refused medical care. Officer Wakham recalled that although the victim had a slight odor that indicated that she had consumed alcohol, the victim appeared to know what she was talking about and was not falling down. Officer Wakham

testified that the victim told her that someone offered her a ride, that she accepted the ride, and that he then drove her to a vacant house at an unknown location in the area where he "forcibly raped and sodomized her."

Elizabeth Thomas, a sexual assault nurse examiner at the Memphis Sexual Assault Resource Center ("MSARC"), testified that she examined the victim when she was brought to MSARC by the MPD. Ms. Thomas testified that the victim told her that an unknown black male asked her to get in the car so he could drive her home and sped off in the car to a darkened neighborhood. He then found a darkened drive, pulled the victim out of the car by her hair, and threw her to the "ground" where he orally, anally, and vaginally raped her. He also sat on her chest with his hands around her throat, choking her. When he finished the sexual assault, he dragged the victim up six to eight concrete steps and finally took the victim back to the Family Barbecue Restaurant.

Ms. Thomas testified that she noted multiple abrasions, bruises, and scratches on the victim's face, arms, legs, trunk, and back during the victim's physical examination. Ms. Thomas stated that the deep dark red impressions that she noted on the victim's neck appeared to be thumb prints because they "had gone past the several layers of skin and the bruising pattern itself was very consistent with thumbprints made when someone had been grasped as if they were strangled." Ms. Thomas testified that the victim's extra-genital injuries were recent because the injuries were very red and none of them had any scabbing. Additionally, Ms. Thomas noted that the bruises were recent because they were very deep red or purple. Ms. Thomas said that the injuries she noted on the victim's back were consistent with a push and fall onto concrete. She also stated that the injury on the victim's neck was consistent with being choked and that a bruise on her wrist was consistent with being grabbed and either held down or moved. Ms. Thomas testified that abrasions on the victim's back formed a long scrape consistent with the victim's being pulled on concrete.

After the physical examination, Ms. Thomas conducted a forensic female anogenital examination of the victim. Ms. Thomas stated that she saw recent injuries in the anal area, including two fissures and a "dime-sized abrasion" in the perianal area. Ms. Thomas testified that, in her opinion, the anal injuries could not have been caused by anything other than a sexual assault. Additionally, the victim's injuries were consistent with the victim's description of the attack. Ms. Thomas collected a sexual assault examination kit from the victim, but she found no deoxyribonucleic acid ("DNA") on the swabs from the kit. She testified that if a patient had used the restroom several times and brushed her teeth before the examination, as the victim had, then it would not be unusual for nothing to appear on the swabs from the kit.

During cross-examination, Ms. Thomas stated that the victim told her she got

in the perpetrator's car. She also stated that nothing appeared in her report about the perpetrator's dragging the victim into a house or about a dirty mattress. Ms. Thomas testified that the victim's scrapes and abrasions could have been consistent with being drunk and falling down on concrete.

Following the close of the State's proof and while the jury was still present in the courtroom, the defendant stood up and, in reference to the victim, said, "She's been convicted of prostitution." The defendant was then escorted from the courtroom. Shortly after his outburst, the defendant returned to the courtroom, and the trial court permitted the defendant to make a statement on the record outside the presence of the jury:

> I would like for the record to say dismissal of this case on the ground that the State has violated my right (indiscernible) the background of the witness sexual craving or her permissive (indiscernible). The State has violated my Six Amendment Right by not letting me question the State's witness. No motion filed on behalf of me. The [S]tate has violated my Fourteenth Amendment Right by not allowing to have—to have evidence on my behalf. No motion filed on my behalf . . . . The State has violated (indiscernible) the violation of not allowing me to have a Suppression Hearing.

After making this statement, the defendant moved for a judgment of acquittal, which the trial court denied. Following a *Momon* colloquy, *see State v. Momon*, 18 S.W.3d 152, 161-62 (Tenn. 1999), the defendant elected not to testify. The defendant then asked the trial court to remove his trial counsel and permit the defendant to represent himself for the remainder of the trial. The trial court cautioned the defendant against representing himself, and the defendant eventually abandoned the request. The defendant presented no proof, and the jury convicted him of the lesser included offense of aggravated sexual battery.

The trial court imposed a Range III sentence of 20 years to be served at 100 percent by operation of law. Following the sentencing hearing, trial counsel filed a timely motion for new trial. Trial counsel also moved to withdraw, citing the defendant's desire to raise a claim of ineffective assistance of counsel in his motion for new trial as grounds. The trial court granted the motion to withdraw and appointed substitute counsel to represent the defendant. Eight months later, the petitioner filed a pro se amended motion for new trial, claiming, among other things, that he had been deprived of the effective assistance of counsel at trial. On that same day, substitute counsel filed an amended motion for new trial adding a claim that trial counsel performed deficiently by failing to file a motion pursuant to Tennessee Rule of Evidence 412 and by failing to call certain witnesses at trial.

The trial court held a hearing on the motion for new trial on three different dates. In the course of that hearing, MPD Lieutenant Marlon Tabor testified that he interviewed the victim at Methodist Hospital and that she told him that "she was approached by a male black selling batteries. The male black offered her a ride home. She accepted a ride. He took her to a location off of Chelsea where he raped her and then he brought her back to that location." Lieutenant Tabor said that he did not "recall her saying she was forced or anything of that nature." He stated that he was not subpoenaed as a witness at the defendant's trial, that he was not interviewed by trial counsel or co-counsel, and that he was not interviewed by anyone associated with those attorneys.

During cross-examination, Lieutenant Tabor acknowledged that he could not ascertain whether the victim was intoxicated and that he did not examine her body for injuries. He also conceded that he spent less than five minutes talking with the victim and that he did not take notes of their conversation. He admitted that he could not recall whether the victim said that she had gotten into the defendant's car voluntarily.

MPD Officer Roger Pike testified that he responded to the initial 9-1-1 call about the victim's rape. He recalled that the victim "alleged that she had gotten a ride with someone, a guy that was later identified to us as Battery Man, that's how we knew him. . . . Then she alleged that he took her to another place, not to where she wanted to go to be driven but took her to another place and that he raped and sodomized her." Officer Pike acknowledged that he had noted in a report that there were inconsistencies between the account the victim provided to him and that she provided to other officers but said that he could not recall the nature of the inconsistencies. Officer Pike said that the victim always maintained that she had been raped and sodomized by the defendant.

The defendant testified that trial counsel was appointed to represent him after his indictment. The defendant said that he had always maintained his innocence and that he had shared ideas with how to handle the case with trial counsel. The defendant recalled that he met two or three times with counsel prior to trial and only once with co-counsel. The defendant testified that he asked trial counsel to subpoena Officer Pike to testify about the inconsistencies between the victim's pretrial statements. The defendant said that he told trial counsel that the victim had worked as a prostitute and that she had been arrested for prostitution in the past. He recalled that he and trial counsel discussed utilizing the victim's history in his defense and that trial counsel mentioned the evidence at the beginning of trial but did not pursue it. The defendant said that it was his understanding that trial counsel had filed a motion seeking to use the evidence but did not ask that the motion be heard. The defendant said that trial counsel's failure to utilize evidence of the victim's sexual history deprived him of a fair trial.

Trial counsel testified that his strategy was to establish that the encounter between the defendant and the victim was consensual but that the severity of the victim's injuries weakened this strategy. Trial counsel testified that he moved the court to permit admission of the victim's sexual history pursuant to evidence Rule 412 but admitted that the motion was untimely. He said that he knew of the victim's history of prostitution and that that history supported the theory of the defense.

Trial counsel testified that he did not call Lieutenant Tabor or Officer Pike because he did not believe their testimony was necessary.

During cross-examination, trial counsel acknowledged that the parties discussed the Rule 412 motion prior to trial and that the trial court indicated that it would grant a continuance of the trial to have the motion heard. Trial counsel said that he eventually elected against pursuing the motion. Trial counsel stated that after he "did get a good look at [the victim] and got an idea of what her situation was," he came to believe that pursuing evidence of her history as a prostitute would do more harm than good to the defendant's case. He said that even if it was true that the victim had previously acted as a prostitute, presenting evidence of that history "was the wrong decision in front of a jury" because the victim was "one of the most sympathetic, almost pathetic victims" he had seen while practicing law. Trial counsel explained, "She was handicapped. . . . She walked with a cane. . . . She . . . looked much older than she really was." He said that the victim "wasn't the kind of person you're going to be able to blame" and that, after seeing her, it was his opinion that "a much softer sell" would be the more effective strategy. Trial counsel reiterated that even if the trial court had granted the Rule 412 motion, he would not have used evidence of the victim's sexual history at trial. Trial counsel said that he utilized cross-examination and closing argument to emphasize that the encounter between the defendant and the victim was consensual. Trial counsel testified that he did not ask for a mistrial after the defendant's outburst because he believed that the trial was going well and that the outburst did not prejudice the defendant's case.

At the conclusion of the hearing, the trial court denied the defendant's motion, finding that "none of those allegations as brought[] would get him a new trial." The trial court also found that trial counsel "did an excellent job during the trial." In a written order denying the motion for new trial, the trial court found trial counsel's decision to forego any evidence that might have been admissible under Rule 412 "to be a sound, tactical choice under the circumstances." The court accredited trial counsel's testimony that the State "presented a very pitiable victim who was handicapped at the time of the offense with a paralysis in her leg, walking with a pronounced limp and cane, and appeared advanced in age, having the look of a very weathered person who had lived a hard life on the street." The trial court also accredited counsel's testimony that any "suggestion that any sexual act

between the victim and defendant was consensual, as an act of prostitution, was extremely problematic due to the extent of her injuries, which were documented by the numerous photographs of her injuries and the testimony" of Ms. Thomas. The trial court noted that the defendant failed to present any proof at the hearing on the motion for new trial "as to what sexual conduct of the victim would have been offered if a Rule 412 hearing had been held," precluding any ruling on whether the evidence would have been deemed admissible prior to trial.

In this appeal, the defendant challenges the sufficiency of the convicting evidence and reiterates his allegation of ineffective assistance of counsel. We consider each claim in turn.

### I. Sufficiency

The defendant claims that the evidence was insufficient to support his conviction, arguing that "the issue of consent looms large" given inconsistencies in the victim's account of the offense. The State contends that the evidence clearly supports the conviction of aggravated sexual battery. We agree with the State.

We review the defendant's challenge to the sufficiency of the evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

Aggravated sexual battery, as relevant to this case, is the "unlawful sexual contact with a victim by the defendant or the defendant by a victim [when] . . . [t]he defendant causes bodily injury to the victim." *Id.* § 39-13-504(a)(2). "Sexual contact" is "the intentional touching of the victim's, the defendant's, or any other person's intimate

parts, . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6). Additionally, "'[i]ntimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." *Id.* § 39-13-501(2).

Here, the victim testified that after she rebuffed his offer of a ride, the defendant forced her into his car and drove her to an abandoned house where he raped her orally, anally, and vaginally. The victim suffered numerous bruises, abrasions, and lacerations to not only her genital area but also her body as a whole. We decline, as we must, the defendant's invitation to reevaluate the victim's credibility and conclude that the evidence was sufficient to support the defendant's conviction of aggravated sexual battery.

## II. Ineffective Assistance of Counsel

In his final claim on appeal, the defendant contends that he was denied the effective assistance of counsel at trial. We note briefly the peril that generally accompanies raising this issue on direct appeal. *See State v. Mosley*, 200 S.W.3d 624, 628-29 (Tenn. Crim. App. 2005) (citing *Kendricks v. State*, 13 S.W.3d 401, 405 (Tenn. Crim. App. 1999), and observing that "this court has consistently 'warned defendants and their counsel of the dangers of raising the issue of ineffective assistance of trial counsel on direct appeal because of the significant . . . amount of development and factfinding such an issue entails'")). The trial court, too, warned the defendant of the dangers of raising this issue and urged him to preserve it for later review. *See Mosley*, 200 S.W.3d at 628 ("The better practice is to make an ineffective assistance of counsel claim in a post-conviction proceeding."). Despite these warnings, the defendant pursued this issue.

To establish entitlement to relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn.1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant

the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App.1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed questions of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn.2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

Here, the defendant complains that his trial counsel performed deficiently by failing to pursue the admission of evidence of the victim's history of working as a prostitute. Trial counsel's accredited testimony established that counsel moved, pursuant to evidence Rule 412, to admit evidence of the victim's previous convictions of prostitution. Counsel exhibited to the motion two affidavits of complaint charging the victim with prostitution. Notably, no certified copies of any convictions stemming from those charges appear in the record, and the copy of the victim's criminal case history exhibited to the defendant's motion shows no disposition for a May 23, 2008 charge of prostitution and a disposition of guilty of a violation of Code section 55-8-139, which prohibits "stand[ing] in a roadway for the purpose of soliciting a ride," related to an April 3, 2004 charge of prostitution. Based on our review of the record, we cannot agree with the defendant that the victim's history of working as a prostitute was "clear from the record."

More importantly, the record establishes that counsel's tactical decision to forego any proof that might have been available under Rule 412 qualifies as sound. Counsel said, and the trial court accredited the testimony, that the victim was "pitiable" due to her handicap and overall physical appearance and that, in light of her visage and demeanor, he believed that attacking her using evidence of her sexual past would be detrimental to the defendant. Counsel also noted that the victim's sexual past would not have explained the serious injuries inflicted on the victim by the defendant. Counsel's strategy was successful in securing a conviction of aggravated sexual battery when the defendant had been originally charged with the much more serious offense of aggravated rape. Under these circumstances, the defendant failed to establish that counsel performed deficiently.

*Conclusion*

The evidence at trial was sufficient to support the defendant's conviction, and the defendant failed to establish that he was deprived of the effective assistance of counsel at trial.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE