# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 18, 2013

## STATE OF TENNESSEE v. TOMMY EARL JONES

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2009-CR-258     Robert E. Burch, Judge**

---

**No. M2012-01716-CCA-R3-CD   Filed October 25, 2013**

---

Following a retrial, the Defendant, Tommy Earl Jones, was convicted by a jury of rape, theft of property valued between $1,000 and $10,000, aggravated kidnapping, and aggravated burglary.  The trial court ordered that the ten-year sentence for rape be served consecutively to the ten-year sentence for aggravated kidnapping, for a total effective sentence of twenty years.  In this direct appeal, the Defendant again contends that (1) the trial court erred when it excluded him from jury selection, trial, and the return of the verdict in the absence of any waiver; and (2) the trial court erred in imposing consecutive sentencing.  After our review, we conclude that the trial court complied with the dictates from this court upon remand.  Accordingly, there is no error in the judgments of the trial court, and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Peggy R. Smith, White Bluff, Tennessee, for the appellant, Tommy Earl Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Dan M. Alsobrooks, District Attorney General; and Billy Henry Miller, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

This case arises from the April 16, 2009 rape of the victim, J.C.,[1] and an accompanying home invasion. As a result, a Dickson County grand jury returned a presentment, in July 2009, charging the Defendant with the offenses of rape, theft of property valued between $1,000 and $10,000, aggravated kidnapping, evading arrest, simple possession of marijuana, and especially aggravated burglary.

The Defendant was initially tried before a jury in December 2009, during which the trial court granted the Defendant's motion for judgment of acquittal on the evading arrest and simple possession charges. The Defendant was convicted of the remaining charges, and he received an effective twenty-year sentence for those convictions. On appeal to this court, the Defendant presented the following issues for review: (1) whether the trial court erred when it excluded the Defendant from jury selection, trial, and the return of the verdict in the absence of any waiver; (2) whether the State presented insufficient evidence to convict the Defendant of especially aggravated burglary; (3) whether the trial court erred when it allowed a forensic expert to testify about opinions based on possibilities; and (4) whether the trial court erred in imposing consecutive sentences. See State v. Tommy Earl Jones, M2010-00976-CCA-R3-CD, 2011 WL 1631832, at *1 (Tenn. Crim. App. Apr. 19, 2011). This court concluded that the Defendant's fundamental right to be present during his first trial was violated, reversed his convictions, and remanded for a new trial. Id. at *4-9. This court also decided that the State presented insufficient evidence to convict the Defendant of especially aggravated burglary, failing to establish the element of serious bodily injury, and that the trial court failed to make the determinations required by State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), in imposing consecutive sentencing. Id. at *9-11, 13-15.

On October 12, 2011, the Defendant was retried for the offenses of rape, theft of property valued between $1,000 and $10,000, aggravated kidnapping, and aggravated burglary. See Tenn. Code Ann. § 39-13-304, -13-503, -14-103, -14-105(3), -14-403. The Defendant was likewise excluded from the courtroom at his second trial.

The proof adduced at the second trial revealed the following facts. On April 16, 2009, the victim, who was three months pregnant, returned home after picking up her three-year-old daughter from preschool. She was in the kitchen washing dishes when she became aware that someone was behind her. She turned and saw a masked man dressed all in black, who sprayed bug spray in her face. The victim testified that she tried to defend herself. During the ensuing struggle, her assailant beat her with a cord from a heater and wrapped it around her neck. The victim, realizing her three-year-old was present in the room, tried to protect her daughter from the intruder. She stated that she was able to "push him off" of her, but the man then attempted to strangle her with his hands. According to the victim, the man asked

---

[1] It is the policy of this court to refer to victims of sexual violence by their initials only.

for money, and she gave him her ring and told him that she had money in her purse. At that point, the man let her go, and she retrieved her purse and gave him the money from inside.

The assailant then forced the victim to the floor, tore her blouse and her bra, and removed her pants. The victim testified that the man then penetrated her vagina, ejaculating outside of her body and cleaning himself with the cup of her bra. After the rape, the man took off a lace from his shoe to tie the victim's feet and used a wire to tie her hands. The assailant asked the victim for her car keys, threatening her with a large shelf when she was unable to help him locate them. Prior to his exit, the assailant pushed a sofa-like chair on top of the victim. He then left, taking with him the victim's car, money, and jewelry. She was thereafter able to free herself, first checking on her daughter, and then getting dressed and seeking help.

The victim testified that she was able to recognize her attacker, realizing during the ordeal that it was the Defendant, her next-door neighbor. She also identified him from a photo array for the police following her attack. Testing by the Tennessee Bureau of Investigation revealed the Defendant's DNA on the victim's bra cup and the victim's and her boyfriend's[2] DNA on the t-shirt the Defendant was wearing at the time of his arrest. The Defendant's fingerprints were also discovered on the stolen vehicle.

The Defendant did not present any proof, and the jury found him guilty as charged. Following a sentencing hearing,[3] the trial court imposed three-year terms for the aggravated burglary and theft convictions, a Class C and D felony respectively, and ten-year terms for the aggravated kidnapping and rape convictions, both Class B felonies. The trial court determined that partial consecutive sentencing was appropriate, ordering the two ten-year terms to be served consecutively to one another, for a total effective sentence of twenty years.

The case is now before this court. The Defendant is again challenging his exclusion during the trial proceedings and the imposition of consecutive sentencing.

## ANALYSIS

### I. Exclusion from trial

The Defendant again argues that the trial court erred when it excluded the Defendant from jury selection, trial, and the return of the verdict in the absence of any waiver on his

---

[2] The victim testified that she had engaged in sexual relations with her boyfriend the night before she was raped.

[3] It does appear from the transcript that the Defendant was present for the sentencing hearing.

part.  In his first appeal to this court, this court held that the trial court committed reversible error when it excluded the Defendant from the courtroom without following the procedures detailed in Rule 43 of the Tennessee Rules of Criminal Procedure.  Jones, 2011 WL 1631832, at *4-9.  In so holding, the court reasoned,

> [P]er Rule 43(b)(2) of the Tennessee Rules of Criminal Procedure, before removing the Defendant for disruptive conduct, the trial court was required to warn him that, if he continued to engage in such conduct, he could be excluded from the courtroom. . . .  Therefore, because the record reveals that the trial court removed the Defendant from his trial without first warning him that he could be excluded if he persisted in disruptive behavior, we find that reversible error was committed and remand for a new trial.

Id. at *9.

At the beginning of the Defendant's second trial, before voir dire had begun, the Defendant was brought into the courtroom and immediately continued in a similar vein as he had done at his first trial.  The following exchange transpired:

> [THE DEFENDANT]:  I ain't going out.  They are in violation of my rights.
> THE COURT:  All right.
> [THE DEFENDANT]:  Sir, I do not want this counsel and is part of the Constitution.  These officers cannot touch me in this manner in a trial.  I mean prison guards — this is a violation, sir.
> THE COURT:  These officers will do what I tell them and they'll do a whole lot more than that.
> [THE DEFENDANT]:  They can kill me right now, yes, sir.
> THE COURT:  All right, [Defendant], I want —
> [THE DEFENDANT]:  They are trying to have me in violation for being disruptive.  Two officers —
> THE COURT: [Defendant], I need to —
> [THE DEFENDANT]:  Dennis Gray —
> THE COURT:  I need to speak with you just a minute.  Please be qu[iet] and let me talk just a minute.
> [THE DEFENDANT]:  Yes, sir.
> THE COURT:  And then I'm going to let you talk, all right.  Now I'm understanding that you are objecting to appearing in court for —
> [THE DEFENDANT]:  Sir, I done [sic] wrote the American Bar Association, I'll be writing to the Justice Department about Officer Gray and Officer Bledsoe and I'll be filing a complaint in the Dickson County Sheriff's Office

for assault. You cannot touch me —

THE COURT: Hey, that's fine. Do it. You've got — make a scene —

[THE DEFENDANT]: Yes, sir. Sir, she is not representing me, sir.

THE COURT: I'm not interested in that. What I want to find out from you is are you going to behave yourself during the trial?

[THE DEFENDANT]: Sir — Your Honor, sir, I filed to [sic] the American Bar Association before. This is a violation — the NAACP will be in Dickson County for me — this is a violation of my rights.

No (indiscernible) on this courtroom present. You cannot do this.

THE COURT: Now —

[THE DEFENDANT]: Look at this. This is assault.

THE COURT: [Defendant], let me tell you what — let me tell you something —

[THE DEFENDANT]: Get your two TBI officers in here, sir. This is a (indiscernible) — this is an assault.

THE COURT: [Defendant] —

[THE DEFENDANT]: Sir, she's not representing me, sir.

THE COURT: Let me tell you what my options are here —

[THE DEFENDANT]: You'll hit me, that's assault. They can't do this. I know my rights. Get my Mike Barrett (phonetic) out there. This is assault. They're trying to put me in violation [sic].

THE COURT: [Defendant], I'm trying to speak to you. If you don't be qu[iet] I'm going to have to duck tape your mouth shut until I can get over what I have to get over to you.

All right. Now all I'm trying to do — I'm just trying to understand about what you're objection is to your trial in that you, as I understand it, somebody told me that you do not wish to be present for your trial?

[THE DEFENDANT]: No, sir. She is ineffective. And I —

THE COURT: No, you don't wish to be in —

[THE DEFENDANT]: Listen — Listen [trial judge]. I wrote you. I wrote the American Bar Association. I don't [sic] wrote the Appella[te] Courts. I don't [sic] wrote the Board of Professional Responsibility. [Defense counsel] would not be representing me and the NAACP will be in Dickson County for this right here. This is assault. You've got a complaint come (indiscernible). This is assault. You cannot do this. Do you hear me?

THE COURT: If you don't be qu[iet] you're going to find out what assault really is. Now —

[THE DEFENDANT]: Everybody that took me here. I've got three witnesses right there TDOC. They're not part of Dickson County. Didn't you'll [sic] see this? This is assault. They violated my rights.

THE COURT:  [Defendant], I'm trying to —

[THE DEFENDANT]:  Sir, they done drug [sic] me in the courtroom, [trial judge].

THE COURT:  All right, tape his mouth shut.

[THE DEFENDANT]:  You'll take me out of the courtroom.  They can't do this.

UNIDENTIFIED OFFICER:  We have no jurisdiction here right now.

[THE DEFENDANT]:  You'll [sic] TDOC.  I'm not going to sit here.  You'll [sic] going to beat me — Miss, you going to let them beat me?  Are you'll [sic] going to let them beat me?

THE COURT:  They're not going to beat you.

[THE DEFENDANT]:  I'm going out [of] the courtroom.  I don't have to be here.  (Indiscernible) in the courtroom.

UNIDENTIFIED OFFICER:  Get the tape.

. . . .

UNIDENTIFIED PERSON:  Where's the tape?

(Indiscernible interruption in the courtroom)

[THE DEFENDANT]:  This don't mean nothing.  She's still not representing me.

(Indiscernible interruption)

THE COURT:  That's good enough.  It doesn't have to stay there long.  All right.  Pick him up.

COMPLIES WITH REQUEST

THE COURT:  All right.  Now [Defendant], I have been forced to silence you because it is my job to make sure you get certain information.

Now I have understood that you do not wish to be present during your trial, is that correct?

You're neither nodding nor shaking your head.  Is that — no, they don't think they want you to do that.

[THE DEFENDANT]:  Could I talk to them?

THE COURT:  No, you can't.  That's why I taped your mouth shut.

All right.  You do not wish to be present, is that right?

I'm having difficulty keeping your attention, [Defendant].

[THE DEFENDANT]:  Don't touch me.

THE COURT:  All right.  [Defendant], if you persist in these during your trial; and I'm understanding that you are telling me you don't even want to be here anyway, is that right?  Nod your head if that's right?

You're not nodding your head, so you do wish to be present for your trial?

All right.  You're neither nodding nor shaking you head.  I presume

-6-

you're being unresponsive.

All right. Well, I want to warn you that disruptive conduct will result in your removal from the courtroom; and if you continue to persist in this, I have no option but to remove you.

[Defendant], all I'm trying to do is give you a fair trial. If you — if I have to exclude you like I did the last time, that can't help you. You've got nothing to lose by staying in the courtroom. You don't have to give up anything. You can complain to whoever you want to. You can write to whoever you want to as long as you'll just be qu[iet] and participate in the trial; but if we go through this trial and that seat there is empty I don't care what I tell that jury it's not going to help you.

You're pointing to go out?

UNIDENTIFIED OFFICER: I'll get ready to take you out.

[THE DEFENDANT]: Uh huh (meaning yes by sound).

THE COURT: Okay. All right. Remove the duct tape.

COMPLIES WITH REQUEST

All right. Now I've told you what I need to tell you. Do you want to stay here for the trial or not?

[THE DEFENDANT]: Come on Buddy (phonetic). I've got three TDOC ready. You-all about to be in court for assault.

THE COURT: All right, remove the [D]efendant. Put him in lockup.

COMPLIES WITH REQUEST

Following voir dire and opening statements, the trial court excused the jury for lunch. The trial court then addressed counsel and noted the procedures that needed to be followed regarding the Defendant's continued exclusion from the courtroom:

THE COURT: All right, counsel be seated please. According to [] Rule 43 I have to bring the [D]efendant — I think that the rule says, shall determine at reasonable intervals whether the [D]efendant indicates a willingness to avoid creating a disturbance if allowed to return to the courtroom.

The [c]ourt was planning to return the [D]efendant to the courtroom at this juncture to determine if we could get some co[ope]ration from him. However, the reports have come to me that the [D]efendant has continued to scream and yell out of his holding cell during the entire time that we have been — during the trial, so all it would do would be — we'd just have to drag him back in the courtroom and go through what we went through at the beginning; and I see nothing to be gained by it. He obviously has not indicated a willingness not to a create a disturbance. Any additions or objections to that procedure?

[DEFENSE COUNSEL]: Just so long as we follow everything by the book.

THE COURT: Yeah, I'm doing my best.

[DEFENSE COUNSEL]: That's all I want to make sure we do, Your Honor.

THE COURT: And what we'll do is, maybe, he'll calm down during lunch and right before we bring the jury back after lunch we'll make another inquiry.

[THE PROSECUTOR]: Your Honor, the only thing I have to say is I concur with [defense counsel] in light of the Court of Criminal Appeals' ruling.

I would like to go on the record, I have heard him throughout [v]oir [d]ire and throughout my opening statement, through two sets of doors and the walls and his presence in the holding cell is distracting mu[ch] less in the courtroom. That's all I wanted to say for the record.

Court recessed for lunch.

After the lunch recess, the Defendant was returned to the courtroom, and the following proceedings took place:

THE COURT: Let the record show the jury is not in the courtroom. Defendant has continued to voice disapproval through much of the lunch break; but he is apparently now somewhat quieter, so given the Court of Appeals' admonition on close following this rule I hesitate to bring him back in just to go through what we went through this morning; but you know, perhaps, we can get him to do a civil disclosure and we're going to try it anyway, so let's bring the [D]efendant in.

. . . .

(WHEREUPON, the [D]efendant returned to open court . . . )

THE COURT: [Defendant], I've asked you to come back in the courtroom to find out if you want to start participating in the trial?

[THE DEFENDANT]: Sir, I need to go to the hospital, Your Honor.

THE COURT: Okay.

[THE DEFENDANT]: That PO (phonetic) he just shocked me. Sir, I got [sic] Crohn's disease. I need to go to the hospital.

THE COURT: I understand that. I considered that and we'll get you to the hospital —

[THE DEFENDANT]: Sir, I've been shocked, sir.

THE COURT: — as soon as the trial is over.

[THE DEFENDANT]: Sir, I got I've been shot [sic] —

THE COURT: All right.

[THE DEFENDANT]: Sir, get me to a hospital. I got [sic] Crohn's disease —

THE COURT: All right. Take him out. Put him back in the lockup.

(Indiscernible Disruption)

THE COURT: All right. Let the record show that the [D]efendant is feigning some type of a physical problem; and the Department of Corrections has checked with the doctor and they said, as long as he is not bleeding or something like that he's fine. And he's obviously malingering and acting and so forth. Quite a good actor I think. He, perhaps, missed his calling.

But there's just no chance that we can get him to participate in the trial or whatever, so we just might as well just go on with it.

The jury returned to the courtroom, and the trial against the Defendant proceeded in his absence.

After the State rested its case against the Defendant, and the jury was excused, the Defendant was brought back into the courtroom a final time for questioning. The following colloquy occurred:

THE COURT: [Defendant], I've got two things I want to ask you. The first one is, again, I'm giving you a chance to come into the courtroom and participate in the trial, if that's what you want to do.

[THE DEFENDANT]: Periodic checks. Can I state for the court that I'm being forced into the courtroom for periodic checks by shock methods and I'm in prison garbs.

THE COURT: [Defendant], yes, sir, I will agree with you. You have no choice. Your only choice is whether you come in the courtroom for the periodic checks as to whether you come in vertically or horizontally.

[THE DEFENDANT]: Right. I just wanted to state for the record that I'm being forced into the courtroom by . . . periodic checks —

THE COURT: Yes, sir.

[THE DEFENDANT]: — by the method of shock and I have a prison guard with shock belt on and shackles and chains in a prison garb.

THE COURT: Yes.

[THE DEFENDANT]: The first time I was drug [sic] in court. I don't understand your methods, sir. That's why I stated from the beginning — the record must state I wasn't disruptive. You brought me by force by two Dickson County deputies. That's a violation of my [c]onstitutional [r]ights. This is a trial.

First off I'm in prison garb, that's a violation of my [c]onstitutional [r]ights.

THE COURT: Because you refused to change.

-9-

[THE DEFENDANT]: Sir, the Appella[te] Courts have motions — the motion I sent you pertaining to [defense counsel] the Appella[te] Courts have that. The American Bar Association have that, the Board of Responsibility have that. When I sent you that notice of appeal to appeal your notice — when I sent a notice of appeal to a court I sent one to the Appella[te] Court in Nashville the same day, so this is all written, being looked upon and I'll be getting a docket sheet and there'll be one — have a trial take place. I'm not in violation. This happened in 2009, sir.

THE COURT: Well, all right, all of those things have already been done and you can address those at the proper time; but my question is do you want to participate in the trial?

[THE DEFENDANT]: This periodic check, sir, I don't have counsel, sir. [Defense counsel] never —

THE COURT: You have counsel — counsel is in [c]ourt.

[THE DEFENDANT]: She never contacted me pertaining to this matter. The prison log will show that in prison — writings or visits —

THE COURT: [Defendant], are you going to answer the question or not?

[THE DEFENDANT]: Sir, I pertain [sic] to any trial if I had [e]ffective counsel. We've discussed this by letter that the Appella[te] Courts have, the Board of Responsibility have, and I hope that my words are being docketed correctly. This matter has been discussed. [Defense counsel] is ineffective assistan[ce] of counsel. I didn't want her as my counsel. I've [been] beat, I've been shocked and I've been drug [sic] into court and forced by court by periodic checks, by method of shock waves standing here in prison garb.

The Appella[te] Court is going — that's one question you asked me, sir, and let me state I can't say that I'm waiving my right to be present at trial because my issue is I do not have effect[ive] counsel, so I chose not to participate in the trial. That's all I can say on that.

THE COURT: That's you're — but that's what you still believe?

[THE DEFENDANT]: I don't have effective counsel.

THE COURT: Okay, so you chose not to participate?

[THE DEFENDANT]: I don't have effective counsel, sir.

THE COURT: All right. Okay. Now the other thing is that you were advised in the last trial even though you did not participate that you did go [a]head and sign the document, you know, about testifying acknowledging that you have a right to testify and so forth?

[THE DEFENDANT]: Yes, sir. By what's going on today, sir, and the way my [c]onstitutional [r]ights are being violated, I chose not to sign nothing and the only reason why I'm standing here now, sir, is because I have C[r]ohn's disease — the Appella[te] Courts have my — I sent them a copy of my

medical file . . . and I've been shocked. I'm in pain right now, sir. In the Appella[te] Court, Michael W. Catalano (phonetic) he will understand this. I'm being forced into here by method of shock — I've been shocked, sir. I'm hurting. I'm bleeding. I'm hurt. I've been denied medical attention —
THE COURT: Okay.
[THE DEFENDANT]: This has been for five hours. I'm in prison garb.

The trial court then attempted to give the Defendant the advice requirements of Momon v. State, 18 S.W.3d 152, 162 (Tenn. 1999), regarding relinquishment of his right to testify. The trial court advised the Defendant as follows:

(1) "Of course, you understand that you have the right not to testify if that is what you want to do?";
(2) "[O]f course, you understand if you don't testify that the jury will not draw any inference from the fact that you did not testify. They will be told that."; and
(3) "[Y]ou understand that if you wanted to testify that we'd let you testify. . . . You've got a right to."

The Defendant again gave rambling, non-responsive answers to this advice. Before excusing the Defendant from the courtroom a final time, the trial court summarized, "All right, sir, you've apparently waived your right to be present. I've done my best to give your Momon rights even though I wasn't really supposed to. That's the only thing I though[t] I could do . . . ."[4]

"A defendant has a fundamental right under both the federal and state constitutions to be present during his trial." State v. Mosley, 200 S.W.3d 624, 631 (Tenn. Crim. App. 2005); see also State v. Muse, 967 S.W.2d 764, 766 (Tenn. 1998) (discussing the various sources that this right is derived from). "Presence at 'trial' means that the defendant must be 'present in court from the beginning of the impaneling of the jury until the reception of the verdict and the discharge of the jury.'" Muse, 967 S.W.2d at 766 (quoting Logan v. State, 173 S.W. 443, 444 (Tenn. 1915)). In Muse, our supreme court held that defendants have "a constitutional right, as well as a Rule 43(a) right, to be present at voir dire." Id. at 767. The court further explained that "[t]here is a constitutional right because the presence of the defendant during jury selection had a reasonably substantial relation to his opportunity to defend against the charge." Id.

---

[4] The trial court noted earlier that defense counsel, not the trial court, was required to question the Defendant pursuant to Momon. However, defense counsel had previously informed the court that the Defendant refused to speak with her and would not respond to her questioning.

In addition to the rights guaranteed by the federal and state constitutions, Rule 43(a)(2) of the Tennessee Rules of Criminal Procedure states that "the defendant shall be present at . . . every stage of the trial including the impaneling of the jury and the return of the verdict." Rule 43 also provides as follows:

> (b) Continued Presence Not Required. The further progress of the trial, to and including the return of the verdict and imposition of sentence, shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present:
> (1) Voluntary Absence. Voluntarily is absent after the trial has commenced, whether or not he or she has been informed by the court of the obligation to remain during the trial; or
> (2) Disruptive Conduct. After being warned by the court that disruptive conduct will result in removal from the courtroom, persists in conduct justifying exclusion from the courtroom.
> (c) Procedure After Voluntary Absence or Removal.
> (1) Representation by Counsel. If a trial proceeds in the voluntary absence of the defendant or after the defendant's removal from the courtroom, he or she must be represented in court by counsel.
> (2) Disruptive Conduct. If the defendant is removed from the courtroom for disruptive behavior under Rule 43(b)(2):
> (A) Access to Counsel After Removal. The defendant shall be given reasonable opportunity to communicate with counsel during the trial; and
> (B) Periodic Review of Removal. The court shall determine at reasonable intervals whether the defendant indicates a willingness to avoid creating a disturbance if allowed to return to the courtroom. The court shall permit the defendant to return when the defendant so signifies and the court reasonably believes the defendant.

During the Defendant's second trial, he was again excluded from the courtroom for his disruptive conduct. This time the trial court gave the required admonitions to the Defendant prior to excluding him, warning him that if he persisted in such conduct he could be excluded from the courtroom. Specifically, the trial court advised, "I want to warn you that disruptive conduct will result in your removal from the courtroom; and if you continue to persist in this, I have no option but to remove you." The trial court returned the Defendant to the courtroom at intervals for periodic review of his removal. In fact, the Defendant even described it as "periodic checks." It is clear from the transcript that the Defendant refused to communicate with defense counsel on any level. On remand, the trial court followed our instructions and complied with the requirements of Rule 43. The Defendant's issue does not provide him with a basis for relief.

## *II. Consecutive Sentencing*

The Defendant again challenges the imposition of consecutive sentencing raising the same issue from his first appeal, i.e., arguing that the trial court failed to make the additional findings required by State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), when relying on the dangerous offender criterion for imposing consecutive sentencing. Initially, we note that the standard of review on the issue of consecutive sentencing is unclear under our State's current jurisprudence, given the recent pronouncement of our supreme court in Bise and further application of that standard to alternative sentencing determinations. See State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see also State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). However, in the arena of consecutive sentencing, our supreme court has not issued a definitive ruling on the standard of review to be applied on appeal.[5] In response, some panels of this court are applying an abuse of discretion standard based upon the recent decisions of Bise and Caudle, while others are continuing to apply a de novo standard of review until instructed otherwise by our supreme court. See generally State v. Eric Demond McCathern, No. M2011-01612-CCA-R3-CD, 2012 WL 5949096, at *4-5 (Tenn. Crim. App. Nov.16, 2012) (majority applying abuse of discretion standard of review and concurring opinion advocating de novo standard of review), perm. app. denied, (Tenn. Feb. 25, 2013).

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances

---

[5] Our supreme court has granted review in State v. James Allen Pollard, No. M2011-00332-CCA-R3-CD, 2012 WL 4142253 (Tenn. Crim. App. Sept. 17, 2012), perm. app. granted, (Tenn. Feb. 13, 2013), which presents the issue of whether the abuse of discretion standard in Bise applies to consecutive sentencing determinations.

arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. However, the imposition of consecutive sentencing is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" Tenn. Code Ann. § 40-35-103(2) & (4).

Here, the trial court imposed consecutive sentences finding that the Defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. See Tenn. Code Ann. § 40-35-115(b)(4). Regarding the imposition of consecutive sentences because the defendant is a dangerous offender, our supreme court has held, "The proof must also establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender." Wilkerson, 905 S.W.2d at 938.

In the Defendant's first appeal, this court determined that "the trial court failed to find that consecutive sentences were 'reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender,' as required by Wilkerson." Jones, 2011 WL 1631832, at *15 (citation omitted). The panel noted, "Were we not reversing the Defendant's convictions, we would remand for resentencing pursuant to the principles recognized in Wilkerson." Id.

On remand, after the trial court found the dangerous offender criterion to again be applicable, the prosecutor stated,

> To bullet proof the record, you're going to have to find according to the Court of Criminal Appeals in the State versus Wilkerson, that he is a dangerous offender and that the sentence is reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender. That's why it got overturned.

The trial court replied, "The [c]ourt so finds."

While perfunctory, the record supports a finding that consecutive sentences are warranted because the Defendant qualifies as a dangerous offender and the Wilkerson requirements have been met. The Defendant forcibly entered the victim's home and sprayed her in the face with bug spray in order to subdue her. He then beat the victim, tied her up, and raped her. He threw a large sofa-like chair on top of her to restrain her. Of great importance, the victim was three months pregnant at the time of these acts, and her three-year-old daughter was present when the events took place.

Under these facts and circumstances, consecutive sentencing is an appropriate and justly deserved sanction. Moreover, we note that the consecutive nature of these sentences appears to be consistent with applicable sentencing principles and guidelines. Based upon either standard of review, de novo or abuse of discretion, we conclude that the trial court's imposition of consecutive sentencing.

## CONCLUSION

In accordance with the foregoing, we conclude that no error exists in the judgments of the trial court and affirm.

_____
D. KELLY THOMAS, JR., JUDGE