# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 26, 2016 Session

## STATE OF TENNESSEE v. ANTONIO McMILLER

### Appeal from the Criminal Court for Sullivan County
### No. S61735    Robert H. Montgomery, Jr., Judge

---

### No. E2015-01597-CCA-R3-CD – Filed July 18, 2016

---

The defendant, Antonio McMiller,[1] appeals his Sullivan County Criminal Court jury convictions of the sale and delivery of cocaine within a drug-free zone, claiming that the trial court erred by permitting him to proceed pro se, that the trial court violated his constitutional right to be present at trial, that the trial court erred by denying his right to counsel of choice, that he was deprived of the right to a fair and impartial jury, that the trial court erred by failing to give certain jury instructions, that the evidence adduced at trial was insufficient to support his convictions, that the trial judge's rulings evinced judicial bias requiring recusal, and that the sentence imposed was excessive. Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Richard Alan Spivey and Timothy Reid Wilkerson, Kingsport, Tennessee (on appeal); and Jonathan Roberts,[2] Bristol, Tennessee (at trial), for the appellant, Antonio McMiller.

---

[1]    Although the defendant refers to himself as Antonio Assim Bey or Antonio Aasim Bey, nothing in the record indicates that the presentment, which refers to the defendant as Antonio McMiller, was ever amended. As is the policy of this court, we utilize the name contained in the charging instrument.

[2]    The defendant originally elected to proceed pro se in this action, but on the date that the trial was set to begin, the defendant was so disruptive that the trial court was forced to suspend the proceedings and remove the defendant from the courtroom. Thereafter, the trial court, over the defendant's objections, appointed Mr. Roberts to represent the defendant at trial, explaining that, if the defendant continued to be removed from the courtroom due to disruptive behavior, Mr. Roberts would "be in a position of representing [the defendant's] interest in the courtroom."

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Kent Chitwood and Lesley Tiller, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

In December 2012, the Sullivan County Grand Jury charged the defendant with alternative counts of the sale and delivery of cocaine within one thousand feet of a school. The trial court conducted a jury trial in July 2014.

Because the defendant was unable to remain in the courtroom without interrupting the trial court or disrupting the proceedings, the trial court ordered that the defendant be removed from the courtroom prior to the start of the trial. After the jury was impaneled, the trial court informed the jurors that the defendant "at this point in time has forfeited his right to be present in the courtroom" but that they "cannot consider the fact that he may not be present in the courtroom as evidence against him that he committed these crimes." The trial court then asked the jurors to raise their hands if they understood that directive, which all of the jurors did.

Detective Mike Hickman of the Kingsport Police Department ("KPD") Vice and Narcotics Unit testified that, on August 30, 2012, one of his confidential informants, Sherry Robertson, informed him that she had been in contact with "a black male that she knew as Frannie" and that the KPD knew as the defendant "from previous interactions." Ms. Robertson told Detective Hickman that she "would be able to buy a gram of crack cocaine from him," and the detective instructed her to "set the deal up for later that night."

At approximately 10:30 p.m. on August 30, the defendant returned Ms. Robertson's telephone call. Because the officers were unable to record the call, they instructed Ms. Robertson to answer the call on "speaker phone" so that they could listen to the conversation. Ms. Robertson told the defendant that she "needed to purchase a gram" or "$100.00 worth of cocaine." The defendant responded that Ms. Robertson should meet him "at the Burger King on North Eastman Road in about 15 minutes." Detective Hickman identified for the jury a map of the North Eastman Road area, which showed that the Burger King was within 1,000 feet of Dobyns-Bennett High School.

Detective Hickman and Ms. Robertson moved to a location approximately 200 yards from the Burger King, and the detective searched Ms. Robertson to ensure that she had no contraband on her person. Detective Hickman then wired Ms. Robertson with audio and video equipment, and he provided her with "$100.00 in photocopied money" to purchase the cocaine. At approximately 11:00 p.m., Ms. Robertson drove to Burger

King, and Detective Hickman followed in a separate vehicle, parking in a nearby parking lot. From his vantage point, Detective Hickman could see Ms. Robertson park next to a van and walk to the passenger's side of the van. At that point, he could no longer see what transpired, but he could hear the parties' conversation via the audio recording equipment. After Ms. Robertson walked away from the van, the van, driven by Steven Suttles, drove away, passing Detective Hickman's vehicle. Detective Hickman was able to positively identify the defendant as the passenger of the van. Shortly thereafter, officers stopped the van and arrested the defendant. Meanwhile, Detective Hickman met Ms. Robertson, who provided the detective with $100 of cocaine, and the detective retrieved the audio and video equipment from her.

Detective Hickman identified for the jury the cocaine that Ms. Robertson purchased from the defendant on August 30.

On cross-examination, Detective Hickman explained that he had observed Ms. Robertson place a telephone call via her cellular telephone to a number in her contacts listed as "Frannie," which was the "street name" for the defendant, and he heard a male voice answer the call. Detective Hickman conceded that he could not independently identify the male voice as belonging to the defendant.

Ms. Robertson testified that, prior to August 30, 2012, she had been charged with driving under the influence ("DUI"), possession of a Schedule II substance, possession of a Schedule III substance, possession of a Schedule IV substance, and possession of drug paraphernalia. While those charges were pending, officers with the KPD Vice Unit had approached her about working as a confidential informant. Ms. Robertson agreed, and as a result, her DUI charge was reduced to reckless driving and her other charges were dismissed. Thereafter, Ms. Robertson continued to work as a confidential informant and was paid $100 for each successful "buy." Ms. Robertson admitted that she had other prior criminal convictions, including four counts of passing worthless checks, two counts of theft of property valued at $500 or less, and two additional counts of theft of property of an unspecified value.

Prior to August 30, Ms. Robertson had met the defendant and knew him as "Frannie." Ms. Robertson testified consistently with Detective Hickman's testimony regarding the events of the cocaine purchase from the defendant on August 30. During her testimony, the State introduced into evidence a copy of the video recording of the controlled buy. On cross-examination, Ms. Robertson conceded that she was not a "voice recognition specialist" but stated that she had spoken with the defendant over the telephone on prior occasions and that she "recognized his voice." Ms. Robertson acknowledged that she had criminal convictions for crimes involving dishonesty,

including some that occurred after August 30, 2012, but she testified that she had never been convicted of a felony.

Steven Starnes, a geographic information systems ("GIS") analyst for the City of Kingsport, testified as an expert in the field of GIS analysis and cartography. He confirmed that the Burger King parking lot where the defendant sold narcotics to Ms. Robertson on August 30 was within 1,000 feet of the Dobyns-Bennett High School campus.

Elaine Minton, coordinator of student services for Kingsport City Schools, confirmed that Dobyns-Bennett High School was "in existence as a public high school on August 30, 2012."

Special Agent and forensic scientist Molly Stanfield with the Tennessee Bureau of Investigation ("TBI") testified that she tested the narcotics at issue and that the substance tested positive for .95 grams of cocaine, a Schedule II narcotic.

With this evidence, the State rested. Following the trial court's denial of the defendant's motion for judgments of acquittal and a *Momon* colloquy, the defendant elected not to testify and chose not to present any proof.

Based on this evidence, the jury convicted the defendant as charged of both the sale and delivery of .5 grams or more of a Schedule II substance within 1,000 feet of a school. Following a sentencing hearing, the trial court merged the two convictions and imposed a sentence of 20 years' incarceration.

Following the denial of his timely motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant contends that the trial court erred by permitting him to proceed pro se during both the trial and his sentencing hearing; that the trial court's removal of the defendant from the courtroom during trial violated his constitutional rights; that the trial court erred by denying the defendant his counsel of choice; that the trial court erred in its instructions to the jury; that the evidence was insufficient to support the defendant's conviction; that recusal was warranted due to the impartiality of the trial judge; and that the trial court improperly sentenced the defendant. We will address each issue in turn.

### I.     *Waiver of Right to Counsel*

The defendant first contends that the trial court erred by permitting him to proceed pro se, both at trial and at his sentencing hearing. The State counters that the

trial court properly determined that the defendant waived his right to counsel and wished to proceed pro se.

A criminal defendant has a right to be represented by counsel or to represent himself and proceed pro se without the assistance of counsel. *See* U.S. Const. amend. IV; Tenn. Const. art. I, § 9; *Faretta v. California*, 422 U.S. 806, 819 (1975); *State v. Northington*, 667 S.W.2d 57, 60 (Tenn. 1984). The right to represent oneself exists "despite the fact that its exercise will almost surely result in detriment to both the defendant and the administration of justice." *See State v. Fritz*, 585 P.2d 173 (Wash. Ct. App. 1978). The right is not absolute, however. To activate the right of self-representation, the defendant must: (1) timely assert the right to proceed pro se; (2) clearly and unequivocally exercise the right; and (3) knowingly and intelligently waive his or her right to assistance of counsel. *State v. Hester*, 324 S.W.3d 1, 30-31 (Tenn. 2010).

This court has recommended that trial courts facing issues of self-representation rely on the questions set forth "in 1 *Bench Book for United States District Judges*." *State v. Herrod*, 754 S.W.2d 627, 630 (Tenn. Crim. App. 1988) (citing *United States v. McDowell*, 814 F.2d 245, 251-52 (6th Cir. 1987)). The "Bench Book" lists some 16 questions, all designed to emphasize the gravity of self-representation and determine the defendant's ability to proceed pro se. The trial court must also, under the Tennessee Rules of Criminal Procedure, advise the defendant "in open court of the right to aid of counsel at every stage of the proceedings" and determine whether the defendant has competently and intelligently waived his right to counsel "by inquiring into the background, experience, and conduct of the accused, and other appropriate matters." Tenn. R. Crim. P. 44(b)(1)(A)-(B). Furthermore, the waiver of counsel must be in writing, and the court must accept the waiver on the record. Tenn. R. Crim. P. 44(b)(2), (3).

Our standard of review of a defendant's exercise of the right of self-representation is a mixed question of law and fact, *see Hester*, 324 S.W.3d at 29, which we review de novo with a presumption of correctness as to the trial court's factual findings, *State v. Holmes*, 302 S.W.3d 831, 837 (Tenn. 2010).

In the instant case, the defendant clearly executed a knowing and intelligent waiver of the right to counsel. At the December 3, 2013 hearing to determine the defendant's ability to proceed pro se, the trial court asked the defendant each of the "Bench Book" questions recommended by this court in *Herrod*, and, based on the defendant's responses, determined that he had knowingly and intelligenty waived his right to counsel. The trial court then, on the record, required the defendant to execute a written waiver of his right to counsel.

With respect to the sentencing hearing, the trial court initially inquired whether the defendant wished for Mr. Roberts, who had been appointed to represent the defendant at trial due to the defendant's inability to refrain from disruptive behavior, to continue his representation. The defendant responded that he had never consented to Mr. Roberts' representation and insisted that he had represented himself "from day one." The following exchange then occurred:

> The Court: So you have previously exerted your right to represent yourself and there's a signed waiver in the file and so I will go ahead and relieve Mr. Roberts. Now, do you want him to sit there and advise you if you have questions, legal questions for him as we go through this?
>
> [The defendant]: No, I never needed him to represent me in the first place. You illegally assigned him to represent me in the first place during the jury trial.

The trial court then relieved defense counsel.

No error attends the trial court's decision to permit the defendant to engage in self-representation. The record clearly established that the defendant executed a knowing and intelligent waiver of the right to counsel and that he continued to assert that knowing and intelligent waiver during his sentencing hearing. Contrary to the defendant's claims, the trial court was under no obligation to appoint new counsel at the sentencing hearing when the defendant himself plainly expressed his desire to continue his own representation.

## II. Right to Be Present in Courtroom

The defendant next contends that the trial court violated his constitutional right to be present in the courtroom by excluding him during the voir dire proceedings and other stages of the trial. The State responds that the defendant forfeited his right to be present by repeatedly engaging in disruptive behavior.

Although a defendant has a fundamental and constitutionally-guaranteed right to be present at trial, "in-court misbehavior may constitute waiver of the right to be present." *State v. Muse*, 967 S.W.2d 764, 766-67 (Tenn. 1998). Tennessee Rule of Criminal Procedure 43 provides that a defendant must be present at "every stage of the trial, including the impaneling of the jury and the return of the verdict" unless the defendant has been "excused by the court on defendant's motion or as otherwise provided

- 6 -

by this rule." Tenn. R. Crim. P. 43(a). If, after having been warned by the trial court that the defendant's "disruptive conduct will result in removal from the courtroom" and the defendant "persists in conduct justifying exclusion from the courtroom," the defendant "shall be considered to have waived the right to be present." Tenn. R. Crim. P. 43(b)(2). Following the defendant's removal due to disruptive behavior, the defendant must continue to be represented in court by counsel and must be given "reasonable opportunity to communicate with counsel during the trial." Tenn. R. Crim. P. 43(c)(1)-(2)(A). The trial court must also "determine at reasonable intervals whether the defendant indicates a willingness to avoid creating a disturbance" if permitted to return to court, and, if the defendant so indicates and the court "reasonably believes" the defendant, the court must allow the defendant to return. Tenn. R. Crim. P. 43(c)(2)(B). We review the trial court's decision to exclude the defendant from the courtroom for an abuse of discretion. *See State v. Mosley*, 200 S.W.3d 624, 634 (Tenn. Crim. App. 2005).

In the instant case, the defendant's trial was originally scheduled to begin on May 12, 2014. On that date, during pretrial proceedings, the defendant repeatedly interrupted the trial judge and questioned the trial court's authority over him. Eventually, the trial judge informed the defendant that if he could not obey the rules of the court, he would be removed from the courtroom. The defendant continued to argue and interrupt the trial judge. The trial judge then addressed the defendant thusly:

> The Court: Now, you need to understand that when we bring in the jury you can't just talk. You can only talk when I recognize you. Do you understand that?
>
> [The defendant]: I don't understand.
>
> The Court: Do you understand that?
>
> [The defendant]: No, I don't.
>
> The Court: Okay, well there are a couple of other options. I mean I could gag you but I don't really want to do that. I can also ban you from the courtroom but I really don't want to do that either.
>
> [The defendant]: It's your choice to do what you do. If you want to violate the constitution that's on you.
>
> The Court: Well, that's your choice. If you want to be gagged during the hearing you're welcome to have that

happen. You can only respond to the court when you're recognized.

Again, the defendant continued to argue with the trial court. The trial court then threatened to hold the defendant in contempt if he spoke without being recognized by the court, and the defendant persisted in interrupting the court. The trial judge instructed the defendant to stop interrupting and informed him that he could "forfeit [his] right to be present for [his] trial and [the court] can put [him] in jail and hold [him] without bond if [he] continue[s] to interrupt." The court repeated this admonition, and the defendant continued to argue and interrupt.

The potential jurors were finally brought into the courtroom after the court had twice warned the defendant to be quiet. While the trial court was giving opening instructions to the potential jurors, the defendant began to speak:

[The defendant]: Once again, none of them can be a jury. None of these are my peers and I want to state for the record that the judge has told me that ---

The Court: Mr. McMiller ---

[The defendant]: -- he does not need a delegation of authority order from congress stating that he can hold this courtroom. That's the only way you can have a courtroom. I don't know if you all know the constitution but you cannot go against the constitution.

The Court: Mr. McMiller ---

[The defendant]: My name is Antonio Aasim Bey.

The Court: Mr. Bey, whatever you're called ---

[The defendant]: And none of these juries ---

The Court: Listen to what I'm saying.

[The defendant]: -- are none of my peers.

The Court: One more outburst and I'll have to remove you from the courtroom.

- 8 -

[The defendant]:     If you want to threaten me, sir, then do what you got to do.  That's your job.  If you want to violate the constitution that's your job.  It is what it is.

The Court:     I've heard your request.

[The defendant]:     I've made no request.  I sent in a writ of affidavit asking for the DOA from congress stating that you can hold this courtroom.  You have to be an Article 3 judge.  That states that in the constitution, Section One.

The Court:     Mr. Bey, Mr. McMiller, I've warned you three times.  Please don't ---

[The defendant]:     Sir, it's on you to do what ---

The Court:     -- ask me to –

[The defendant]:     --you've got to do.

The Court:     All right, sheriff, Mr. Bey here, Mr. McMiller seems to feel like that he needs to speak out even though he's not been recognized by the court.  As a result of that I'm going to have to remove him from the courtroom.  I'm also going to find that he is engaging in conduct which results in the obstruction of the orderly and expeditious process of the trial and so he's going to be removed for his trial.  So if you'll take him into custody.

The defendant was then removed from the courtroom, and the trial court informed the potential jurors that the defendant's trial would be reset for another date.  After the potential jurors left the courtroom, the trial court stated for the record that the defendant "was disruptive in the courtroom, purposefully delaying and interrupting the trial proceedings."

The trial was rescheduled for July 30, 2014.  Once again, during the pretrial proceedings, the defendant continued his disruptive behavior, arguing with and repeatedly interrupting the trial judge.  The trial judge patiently and politely responded to the defendant's interruptions and thrice asked the defendant if he was capable of speaking only when recognized by the court.  Each time, the defendant responded with lengthy

diatribes which appeared orchestrated to circumvent the question. The trial court told the defendant that if he continued to be disruptive, he would again forfeit his right to be present at trial. The court asked the defendant a fourth time if he was able to speak only when recognized, and the defendant again refused to answer the question. At that point, the trial court informed the defendant that he had forfeited his right to be present; that, from time to time, appointed counsel would consult with the defendant during the course of the trial; and that, from time to time, the defendant would be returned to the courtroom to allow the court to determine whether he was willing to cooperate.

Prior to the commencement of voir dire, the trial court informed the potential jurors that the defendant had "forfeited his right to be present in the courtroom" and that the defendant's absence should not be considered "as to whether or not he committed these crimes . . . with which he is charged." The court asked the potential jurors to raise their hands if they understood that instruction, and all jurors complied.

Following the selection of the jury, the jury was removed from the courtroom, and the defendant was brought back into the courtroom. The trial court asked the defendant three times if he was capable of remaining in the courtroom and only speaking when he was so recognized, and, each time, the defendant gave a rambling response that failed to answer the question and continued to question the court's authority. The court, once again, removed the defendant from the courtroom due to his inability to cooperate.

Following opening statements and the examination of Detective Hickman, the defendant was returned to the courtroom at the start of Ms. Robertson's testimony. An outburst by the defendant during Ms. Robertson's testimony once again resulted in the defendant's removal from the courtroom. At the conclusion of Ms. Robertson's direct examination, the court stood in recess. Prior to the commencement of Ms. Robertson's cross-examination, the trial court again attempted to bring the defendant back into the courtroom, and the defendant again refused to cooperate, resulting in his removal from the courtroom for the remainder of the State's case-in-chief.

Following a lengthy discussion, the trial court permitted the defendant to deliver his own closing argument, after admonishing him to "argue the facts in this case and the applicable law." A few sentences into his argument, the defendant misstated the law, claiming that for "a crime to exist there has to be an injured party" and "[t]here has to be a real person bringing the accusation, not the State of Tennessee." The prosecutor objected, the defendant argued that the trial judge was "violating his oath" by engaging in "duress and coercion," and the jury was excused. Because the defendant stated that he did not wish for his appointed counsel to complete his closing argument, the trial court ruled that closing argument for the defense had been completed.

Taking all of this into consideration, we find it abundantly clear that the defendant repeatedly engaged in disruptive behavior, thereby waiving his right to be present during the trial.  The trial court held fast to the strictures of Rule 43, ensuring that the defendant was represented by counsel in his absence; giving counsel opportunities to communicate with the defendant during trial; and giving the defendant several opportunities during the course of the trial to return to the courtroom.  On each of those occasions, the defendant utterly failed to demonstrate a willingness to avoid creating further disturbances.  As such, we discern no abuse of discretion in the trial court's decision to exclude the defendant from the courtroom.

## III.  Right to Counsel of Choice

Next, the defendant challenges whether the trial court should have granted his request for appointed counsel who shared his religious beliefs or his nationality as an "indigenous aboriginal Moorish American[]."

An indigent defendant is constitutionally guaranteed the right to assistance of appointed counsel.  *See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9.  Neither the federal nor state constitutions, however, require that an indigent defendant receive counsel of his choice, or counsel with whom the defendant enjoys "special rapport, confidence, or even a meaningful relationship." *State v. Carruthers*, 35 S.W.3d 516, 546 (Tenn. 2000), *cert. denied*, 533 U.S. 953 (2001).  The baseline guarantee is one of effective counsel, not preferred counsel.  *Id.*  On appellate review, we examine the trial court's ruling only for abuse of discretion.  *State v. Huskey*, 82 S.W.3d 297, 305 (Tenn. Crim. App. 2002).

Despite the defendant's assertions to the contrary, the religious freedoms granted to citizens by the Establishment Clause and the First Amendment of the United States Constitution do not extend to indigent defendants who are seeking appointed counsel possessing the same or similar religious beliefs.  The law is clear that indigent defendants are not entitled to the appointment of counsel of choice, and the trial court was under no obligation to "reasonably accommodate" the defendant's religious beliefs in this case.  As such, the trial court did not abuse its discretion by denying the defendant's request.

## IV. Jury Impartiality

Next, the defendant argues that he was deprived of the right to a fair and impartial jury because the jury was exposed to extraneous, prejudicial information in the

form of the defendant's own disruptive conduct during the course of trial, specifically during Ms. Robertson's testimony and during closing argument. We disagree.

"A party challenging the validity of a verdict must produce admissible evidence to make an initial showing that the jury was exposed to extraneous prejudicial information or subjected to an improper outside influence." *State v. Adams*, 405 S.W.3d 641, 651 (Tenn. 2013). "Extraneous prejudicial information" encompasses "the form of either fact or opinion that was not admitted into evidence but nevertheless bears on a fact at issue in the case," and improper outside influence is conisidered "any unauthorized 'private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury.'" *Id.* at 650-51 (quoting *Remmer v. United States*, 347 U.S. 227, 229 (1954)).

In the instant case, the defendant disrupted Ms. Robertson's trial testimony, standing and objecting to her referring to him as Mr. McMiller rather than as Mr. Bey and claiming that the trial court had no authority over him. After instructing the defendant to be seated five separate times, the defendant complied, and the court instructed the jury to disregard the defendant's comments. A short time later, the defendant again objected to Ms. Robertson's characterization of him as "Frannie." The trial court twice instructed the defendant to be seated, and when the defendant refused and continued speaking, the trial court asked the jury to step out and then ordered the defendant removed from the courtroom. After denying the defendant's motion for a mistrial and ordering the jury to be returned to the courtroom, the trial court addressed the jury, asking whether they could disregard the statements made by the defendant and whether they believed they could still "be fair and impartial and base [their] decision solely on the law and the evidence." All jurors responded in the affirmative.

The defendant was returned to the courtroom for closing arguments, and, following a lengthy discussion outside the presence of he jury, the trial court permitted the defendant to deliver his own closing argument, with the caveat that he address only the evidence presented at trial and the applicable law. Shortly after the defendant began his closing argument, the prosecutor objected to a misstatement of the law. The court sustained the objection and again instructed the defendant to "argue the evidence and the applicable law." The defendant then told the jury that the trial judge had been violating his oath to uphold the Constitution, drawing another objection from the State. At that point, the trial court again asked the jury to step out of the courtroom. The court asked the defendant whether he wished for his attorney to complete his closing argument, and the defendant stated that he did not. When the jury was brought back into the courtroom, the trial court again instructed the jurors to disregard "other things that don't have any application to the facts in this case, the evidence and the law."

Without question, the outbursts of the defendant related to his name and the authority of the trial court do not qualify as either extraneous prejudicial information or improper outside influences, as those terms have been defined. *See Adams*, 405 S.W.3d at 650-51. To the extent that the defendant chose to misbehave in front of the jury, he was the cause of any potential prejudice. Courts of this land are charged with ensuring the rule of law, and deliberate and repeated disruption of that function obviously cannot be tolerated. As such, we perceive no error.

## V. Jury Instruction

The defendant argues that the trial court erred by failing to instruct the jury "regarding the credibility of the testimony of Sherry Robertson in connection with her history of convictions for crimes of dishonesty and her status as an accomplice." The defendant failed to raise an objection to the jury instructions in his motion for new trial or his amended motion for new trial. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . [any] ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); *see also State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial but were not raised in the motion); *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). "Issues raised for the first time on appeal are considered waived." *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996); *see also* Tenn. R. App. P. 36(b); *State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988); *State v. Rhoden*, 739 S.W.2d 6, 11 (Tenn. Crim. App. 1987); *State v. Jenkins*, 733 S.W.2d 528, 532 (Tenn. Crim. App. 1987). Because he raises this issue for the first time on appeal, it is waived. In any event, the instruction provided by the trial court on witness credibility tracked the language of the pattern jury instruction and was a correct statement of the law.

With respect to the defendant's contention that the trial court failed to give an accomplice instruction, the law is well-settled that confidential informants "working under the direction of and for the police are not accomplices during the time that they were acting with the police to ensure 'the conviction and punishment of [their] confederates.'" *State v. Steve Duclair*, No. E2012-02580-CCA-R3-CD, slip op. at 11 (Tenn. Crim. App., Knoxville, April 23, 2014), *perm. app. denied* (Tenn. Oct. 16, 2014) (quoting *Halquist v. State*, 489 S.W.2d 88, 94 (Tenn. Crim. App. 1972)). Because Ms. Robertson was acting as an informant in the instant case, an accomplice instruction was not warranted.

## *VI. Sufficiency*

The defendant next contends that the evidence was insufficient to support his conviction. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"It is an offense for a defendant to knowingly . . . (2) [d]eliver a controlled substance . . . [or s]ell a controlled substance." T.C.A. § 39-17-417(a). A violation of this section with respect to 0.5 grams or more of cocaine, a Schedule II controlled substance, *see id.* § 39-17-408(b)(4), is a Class B felony unless it "occurs . . . within one thousand feet (1,000') of the real property that comprises a public . . . secondary school," when it "shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation," *see id.* § 39-17-432(b).

Here, the evidence established that the defendant sold 0.95 grams of cocaine to Ms. Robertson during a controlled buy on August 30, 2012. The purchase was recorded via audio and video equipment, and the defendant's face was visible during the transaction. In addition, proof established that the cocaine transaction occurred within 1,000 feet of Dobyns-Bennett High School. This evidence was more than sufficient to support the defendant's convictions of the sale and delivery of 0.5 grams or more of cocaine.

## VII.  Recusal of Trial Court

The defendant next contends that the trial judge's rulings evince judicial bias requiring the judge's recusal.  In support of his position, the defendant references the court's holding the defendant in contempt "for his refusal to stand . . . when ordered to do so by the officer announcing the opening of court," as well as the court's rulings on several of the defendant's oral motions and the court's alleged "confrontational and sarcastic demeanor toward" the defendant.   The State argues that this issue must fail because the defendant failed to seek recusal of the trial judge at any time during trial.

Tennessee Supreme Court Rule 10B provides that a party seeking recusal or disqualification of a judge "shall do so by a timely filed written motion" supported by an affidavit and alleging with specificity the grounds for the motion.  Tenn. Sup. Ct. R. 10B § 1.01.  "'[R]ecusal motions  must be filed promptly after the facts forming the basis for the motion become known, and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality.'"  *State v. Antonio Freeman*, No. M2012-02691-CCA-10B-CD, slip op. at 5-6 (Tenn. Crim. App., Nashville, Jan. 15, 2013 (quoting *Duke v. Duke*, 398 S.W.3d 665, 670 (Tenn. Ct. App. 2012)).

Because the defendant failed to timely file a motion to recuse, he has waived our consideration of this issue.  Furthermore, we find no evidence of judicial bias.  The record is replete with instances of the defendant's showing disrespect to the court by repeated interruptions and questioning of the court's authority.  In our view, the trial court exercised extreme patience and great restraint in its dealings with an often belligerent defendant.  Accordingly, the defendant is not entitled to relief on this issue.

## VIII.  Sentencing

Finally, the defendant contends that the trial court erred by imposing an excessive sentence and one that was contrary to the purposes and principles of sentencing.  Again, we disagree.

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act."  *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).  The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed."  T.C.A.  §  40-35-103(5).   Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or

mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in *Bise,* "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

Following a sentencing hearing, the trial court issued its ruling from the bench, basing its decision on consideration of the evidence adduced at trial and at the sentencing hearing, the presentence report, principles of sentencing, the parties' arguments, the nature and characteristics of the crime, and evidence of enhancing and mitigating factors. The court determined that the defendant had a prior history of criminal convictions, which outweighed the mitigating factors of his crime neither causing nor threatening serious bodily injury and "some work history." After noting that the crime carried a minimum sentence of 15 years and a maximum sentence of 25 years, the trial court sentenced the defendant to 20 years. The judgment form indicates that the defendant was sentenced as a standard offender, and that, because his crime was committed in a drug-free zone, he must serve the mandatory minimum sentence of 15 years prior to release eligibility. *See* T.C.A. § 39-17-432(c) ("Notwithstanding any other law or the sentence imposed by the court to the contrary, a defendant sentenced for a violation of subsection (b) shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence."). Because the trial court considered all appropriate statutory principles and imposed a within-range sentence, we conclude that the record fully supports the length of sentence imposed in this case.

*Conclusion*

Based upon the foregoing analysis, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

- 16 -