IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 21, 2024

## STATE OF TENNESSEE v. TONY LAMONS GOOCH, III, A.K.A. TONY LAMONS GOOCH

**Appeal from the Criminal Court for Davidson County**
**No. 2020-D-2065    Steve R. Dozier, Judge**

———————————————————

### No. M2022-01395-CCA-R3-CD

———————————————————

A Davidson County jury convicted the Defendant, Tony Lamons Gooch, III, of two counts of aggravated robbery.  The trial court imposed an effective sentence of twelve years in confinement.  On appeal, the Defendant raises the following issues for our review:  (1) whether the trial court abused its discretion in denying his motion for a judgment of acquittal; (2) whether the stop and seizure were adequately supported by probable cause or reasonable suspicion and whether the length of the stop exceeded the scope of the stop; (3) whether the preliminary hearing was improperly conducted; (4) whether trial counsel rendered ineffective assistance; (5) whether the Metropolitan Nashville Police Department and the City of Nashville are liable for implementing unconstitutional policies; and (6) whether the United States District Court committed plain error by holding that the Defendant's federal false imprisonment claims were untimely.  Upon our review, we hold that the evidence is legally sufficient to support his convictions.  We also hold that we lack jurisdiction to entertain an original civil action or to review federal court proceedings.  Finally, because the Defendant has waived plenary review of the remaining issues and has not requested plain error review, we respectfully affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and MATTHEW J. WILSON, JJ., joined.

Tony Gooch, Clifton, Tennessee, Pro Se (on appeal), and Nick McGregor, Nashville, Tennessee (at trial).

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Jennifer Charles,

Chantley Frazier, Wilmoth Baker, and Ross Boudreaux, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

On January 8, 2019, Natalie Agosto and A.B.[1] were working at the Hyatt Place Hotel in Davidson County. A little after 3:00 p.m., the Defendant and Louis Steele, dressed almost identically in black clothing and carrying what appeared to be black semiautomatic pistols, ran into the hotel's lobby and began demanding money. Both men wore gloves and masks that covered most of their faces.

Mr. Steele demanded "big bills," specifically "hundreds." A.B. took Mr. Steele to the bar area and gave him the cash from the register. Mr. Steele rejoined the Defendant and searched the drawers of the front desk. After taking the victims' cell phones, the gunmen then ran out of the building.

The Defendant and Mr. Steele then ran to the Defendant's Ford Mustang, changed their shirts, and sped toward the interstate. Ms. Agosto and another witness saw the vehicle leave. As they drove on the interstate, the Defendant threw the women's cell phones out of the car window.

When the police arrived at the hotel, Ms. Agosto gave them a description of the getaway car. The women also informed the police that the gunmen had taken their cell phones and a total of $348 cash, which included paper-wrapped rolls of coins. Ms. Agosto gave the police information that enabled them to track her cell phone, and the police found her cell phone on the side of the interstate.

Metropolitan Nashville police officers received an alert to be on the lookout for an orange Mustang. The officers noticed the Defendant's car and followed it to a parking lot. After conducting an investigatory stop, the officers arrested the Defendant and Mr. Steele. A.B. and Ms. Agosto were then taken at separate times to see if they could identify the perpetrators. A.B. identified Mr. Steele during the show-up identification but did not positively identify the Defendant until the preliminary hearing. Ms. Agosto identified both men in the show-up identification.

---

[1] For reasons that are more directly related to the separate case involving Mr. Steele, which is not part of this appeal, we elect to refer to A.B. only by her initials.

After obtaining a search warrant for the Defendant's car, the police found the Defendant's wallet, his Tennessee identification, and whitish-gray and blue gloves. A security video showed one of the gunmen wearing gloves of the same or similar color during the offense. Law enforcement also found rolls of coins, black clothing, and dark gloves.

In relevant part, a Davidson County grand jury charged the Defendant and Mr. Steele with the aggravated robberies of Natalie Agosto and A.B.[2] The trial court severed the Defendant's case for trial, and the Defendant's trial began on February 28, 2022. Following the conclusion of the trial, the jury found the Defendant guilty of both counts of aggravated robbery.

The trial court imposed concurrent sentences of twelve years as a Range I, standard offender for each aggravated robbery conviction. On September 14, 2022, the trial court denied the Defendant's motion for a new trial, allowed trial counsel to withdraw from representation, and permitted the Defendant to proceed pro se on appeal after the Defendant executed a waiver of counsel for appellate purposes. Ten days later, the Defendant filed a timely notice of appeal.

## ANALYSIS

On appeal, the Defendant raises the following issues for our review: (1) whether the trial court abused its discretion in denying his motion for a judgment of acquittal; (2) whether the stop and seizure were adequately supported by probable cause or reasonable suspicion and whether the length of the stop exceeded the scope of the stop; (3) whether the preliminary hearing was improperly conducted; (4) whether trial counsel rendered ineffective assistance; (5) whether the Metropolitan Nashville Police Department and the City of Nashville are liable for implementing unconstitutional policies; and (6) whether the United States District Court committed plain error by holding that the Defendant's federal false imprisonment claims were untimely.[3] We address each of these issues in turn.

---

[2] The original indictment was returned against the Defendant and Mr. Steele in January 2019. However, in October 2020, a grand jury returned a superseding indictment against them. The record reflects that on December 17, 2020, the State voluntarily dismissed the original indictment and proceeded to trial on the superseding indictment.

[3] We address these issues in a different order than that presented by the Defendant in his brief.

### A.   MOTION FOR JUDGMENT OF ACQUITTAL

The Defendant first asserts that the trial court abused its discretion in denying his "motion for judgment of acquittal based on an illegal traffic stop and illegal arrest." However, it appears that the Defendant's arguments here are a restatement of those advanced in support of his motion to suppress. For the reasons we have given above, we respectfully decline to review issues not raised and passed upon in the trial court.

That said, "[t]he standard for reviewing the denial or grant of a motion for judgment of acquittal is analogous to the standard employed when reviewing the sufficiency of the convicting evidence after a conviction has been imposed." *State v. Robinson*, 146 S.W.3d 469, 524 (Tenn. 2004) (appendix). In other words, this court determines "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, this standard requires us to resolve all conflicts in favor of the State's theory and to view the credited testimony in a light most favorable to the State. *State v. McKinney*, 669 S.W.3d 753, 772 (Tenn. 2023). To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury, as the trier of fact." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (internal quotation marks and citation omitted).

Importantly, this standard of review "does not permit a court to make its own subjective determination of guilt or innocence[.]" *Jackson*, 443 U.S. at 319 n.13. Instead, the standard is intentionally deferential to the State's case because it seeks to preserve the jury's role in our system of separated powers and "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Id.* at 319. Properly conceived, the role of a reviewing court in assessing the legal sufficiency of the convicting evidence is not to "reevaluate the credibility of the witnesses or to revisit inconsistencies in the testimony[,]" should there be any. *State v. Murray*, No. M2021-00688-CCA-R3-CD, 2022 WL 17336522, at *5 (Tenn. Crim. App. Nov. 30, 2022), *perm. app. denied* (Tenn. Mar. 8, 2023). As such, arguments that challenge "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts" will usually fall short. *Jackson*, 443 U.S. at 319.

In this case, the Defendant was convicted of two counts of aggravated robbery. Tennessee Code Annotated section 39-13-402(a)(1) defines aggravated robbery as robbery

"[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103(a). In addition, a person may be held criminally responsible as a party to an offense under Tennessee law "if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." *Id.* § 39-11-401.

Our supreme court has recognized that "criminal responsibility is not a separate, distinct crime. It is solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999). As charged in this case, a person may be criminally responsible for an offense committed by another person, if "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" Tenn. Code Ann. § 39-11-402(2). Under this particular theory of criminal responsibility, "the evidence must establish that a defendant in some way knowingly and voluntarily shared in the criminal intent of the crime and promoted or assisted its commission." *State v. Pope*, 427 S.W.3d 363, 369 (Tenn. 2013) (citations omitted). "Thus, the State must prove both that the defendant's intent and his or her conduct come within the language of the statute itself." *State v. Jenkins*, No. M2022-00693-CCA-R3-CD, 2023 WL 5813706, at *5-6 (Tenn. Crim. App. Sept. 8, 2023), *no perm. app. filed*.

Viewed in a light most favorable to the State, the proof at trial showed that the Defendant and Mr. Steele dressed in black clothes and masks and entered the Hyatt Place Hotel with a plan to commit a robbery. They each carried semiautomatic pistols and pointed these weapons at the victims to effectuate the robbery. Mr. Steele took money from the hotel registers, and the Defendant or Mr. Steele took cell phones belonging to the victims. The two left the hotel, changed clothes, and escaped in the Defendant's car. Mr. Steele later testified that, during their escape, the Defendant threw the victims' cell phones out of the car window, and law enforcement officers later found one of these phones on the side of the highway. Finally, the victims testified at trial that they could identify the Defendant as one of the gunmen.

Under the deferential standard of review, we conclude that a reasonable juror could have found beyond a reasonable doubt that the Defendant robbed the victims or was criminally responsible for these offenses. As such, the proof is legally sufficient to support the Defendant's two convictions for aggravated robbery, and we conclude that the trial court did not err by denying the Defendant's motion for judgment of acquittal. The Defendant is not entitled to relief on this ground.

## B.    INVESTIGATIVE STOP

The Defendant next argues that the police had no probable cause or reasonable suspicion to conduct the stop of his vehicle and that the length of the stop exceeded the scope of the stop.  In response, the State contends that the Defendant has waived plenary review of any suppression issue by raising it for the first time on appeal, and thus is limited to plain error review.  Further, the State argues that even if this court were to conduct plain error review, the Defendant cannot establish any of the five requirements needed to be granted relief.  We agree with the State.

The Defendant argues his suppression motion strongly in this court.  However, he acknowledges that no motion was filed in the trial court seeking to suppress evidence discovered during the stop, seizure, or arrest.  This absence of a motion is important because "[m]otions to suppress evidence must be filed pretrial, and the failure to do so results in [a] waiver of the issue." *State v. Hardison*, 680 S.W.3d 282, 309 (Tenn. Crim. App. 2023) (citing Tenn. R. Crim. P. 12(b)(2)(C), (f)(1)); *State v. Stanhope*, 476 S.W.3d 382, 396 (Tenn. Crim. App. 2013) ("A motion to suppress evidence must be filed prior to trial.  Failure to do so results in a waiver of the issue." (citing Tenn. R. Crim. P. 12 (b)(2)(C))).  Indeed, because the trial court was not asked to conduct a hearing on the issues in the first instance, we have no record to review, including appropriate findings and conclusions, to determine if the Defendant's issues had merit.  *See State v. Rowland*, 520 S.W.3d 542, 546 (Tenn. 2017); *State v. Richards*, No. M2022-00831-CCA-R3-CD, 2023 WL 6972550, at *12 (Tenn. Crim. App. Oct. 23, 2023) (observing that the trial court must resolve factual inconsistencies at the motion hearing and cannot simply defer "to the jury's later consideration of the ultimate issue at trial"), *no perm. app. filed*.

Nevertheless, even if a motion to suppress had been filed before trial, the issues were not brought to the trial court's attention in a motion for a new trial.  We have previously recognized that "[b]efore a defendant may raise an issue on appeal as the basis for seeking a new trial, the defendant must present the issue to the trial court in a timely, written motion for a new trial." *State v. Funk*, No. E2022-01367-CCA-R3-CD, 2023 WL 7130289, at *2 (Tenn. Crim. App. Oct. 30, 2023) (first citing Tenn. R. App. P. 3(e); and then citing Tenn. R. Crim. P. 33(b)), *no perm. app. filed*.  Except for issues related to sentencing and the sufficiency of the convicting evidence, the failure to file a motion for a new trial waives plenary review of all issues on appeal that could have resulted in a new trial.  *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010).  In that circumstance, a defendant may obtain relief, if at all, under the standards governing plain error review.  *See Howard v. State*, 604 S.W.3d 53, 62 (Tenn. 2020).  Indeed, we have specifically recognized that a defendant's failure to raise suppression issues in a motion for a new trial will act "as a bar to plenary appellate review of any claim with regard to the ruling of the trial court on the motion." *State v. Lozano*, No. M2017-01250-CCA-R3-CD, 2018 WL 4275919, at *3 (Tenn. Crim. App. Sept. 7, 2018), *perm. app. denied* (Tenn. Feb. 20, 2019).

"Because the defendant failed to file his suppression motion prior to trial, as Rule 12(b)(2)(C) requires, and also failed to raise the issue in his motion for new trial," he has waived plenary review and may obtain relief, if at all, pursuant to the plain error doctrine. *See State v. Dotson*, 450 S.W.3d 1, 54 (Tenn. 2014). However, our supreme court has cautioned that our discretionary authority to review unpreserved issues for plain error must be "sparingly exercised." *See State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007). In this case, we respectfully decline to exercise that discretion for two reasons.

First, in his principal brief, the Defendant did not request that we conduct plain error review, and he did not argue or analyze any of the factors that could justify plain error relief.[4] *State v. Enix*, 653 S.W.3d 692, 701 (Tenn. 2022) (setting forth criteria for plain error review). "To be clear, a party seeking plain error relief must generally raise and argue the issue in the party's briefing, just as the party would do with all other issues in the ordinary course of an appeal." *Funk*, 2023 WL 7130289, at *3 (citing Tenn. R. App. P. 27(a)). Because the Defendant bears the burden of showing an entitlement to plain error relief, his failure to request this relief necessarily weighs against any such consideration on our own. *See State v. Cornwell*, No. E2011-00248-CCA-R3-CD, 2012 WL 5304149, at *18 (Tenn. Crim. App. October 25, 2012), *perm. app. denied* (Tenn. Mar. 5, 2013).

Second, and more importantly, the State specifically argued in its response brief that the Defendant waived the suppression issue by failing to raise it before trial and in a motion for a new trial. Despite being on notice that his issue may be waived because the issue was not presented and preserved in the trial court, the Defendant failed to respond to this argument in his reply brief. "Where a defendant fails to respond to a waiver argument, only particularly compelling or egregious circumstances could typically justify our sua sponte consideration of plain error relief." *State v. Thompson*, No. W2022-1535-CCA-R3-CD, 2023 WL 4552193, at *5 (Tenn. Crim. App. July 14, 2023), *no perm. app. filed*; *State v. Powell*, No. W2011-002685-CCA-R3-CD, 2013 WL 12185202, at *8 (Tenn. Crim. App. Apr. 26, 2013), *perm. app. denied* (Tenn. Sept. 11, 2013). Because no "particularly

---

[4]     We observe that the Defendant references "Plain Error Request" in the footer on each page of his principal brief. However, even if we interpret this text as the Defendant attempting to raise this question, two issues exist. First, the Rules of Appellate Procedure generally require that issues be raised in the statement of the issues. *See* Tenn. R. App. P. 27(a)(4). We have previously cautioned appellants "against the practice of raising issues on appeal in footnotes of their appellate briefs," *Jordan v. State*, No. W2015-00698-CCA-R3-PD, 2016 WL 6078573, at *57 (Tenn. Crim. App. Oct. 14, 2016), *perm. app. denied* (Tenn. July 19, 2017), and the same caution must surely extend to raising issues in a document footer.

Second, and more importantly, simply raising an issue is not sufficient to preserve it for appellate review. Instead, a party must also present "argument in support of this issue in his brief" and cite to "any authorities [and] appropriate references in the record." *State v. Molthan*, No. M2021-01108-CCA-R3-CD, 2022 WL 17245128, at *2 (Tenn. Crim. App. Nov. 28, 2022), *no perm. app. filed*. Because the Defendant does not argue the plain error factors or cite appropriate authorities, the argument would nevertheless be waived for that reason as well. *See id.*

compelling or egregious circumstances" exist here, we respectfully decline to consider plain error relief on our own.

### C.    PRELIMINARY HEARING

The Defendant next raises issues with respect to his preliminary hearing. More specifically, he argues that the State used inadmissible or legally incompetent evidence during the hearing and that he was denied the effective assistance of counsel. However, the Defendant's motion for a new trial did not raise any issue with respect to the preliminary hearing, and it did not advance the arguments presented in this court. As such, we must conclude that the Defendant has waived plenary review of this issue, and for the reasons given above, we respectfully decline to review the issue for plain error. The Defendant is not entitled to relief on this ground.

### D.    INEFFECTIVE ASSISTANCE OF COUNSEL

The Defendant next argues that he was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution. In fact, the Defendant asserts that this is the "essential question presented for review on this appeal[.]" However, the Defendant failed to present this issue in his motion for a new trial, and for the reasons given above, this issue is also waived.

Despite the waiver, we pause for a moment to discuss the practical effects of this waiver on claims raising the ineffective assistance of counsel. "To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that counsel's performance was deficient and that counsel's deficiency prejudiced the defense." *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To show prejudice, the petitioner must "establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Howard v. State*, 604 S.W.3d 53, 58 (Tenn. 2020) (citations omitted). The prejudice inquiry is fact-intensive, and "[i]n making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695; *Moffitt v. State*, 29 S.W.3d 51, 56 (Tenn. Crim. App. 1999) ("We must also consider the totality of the evidence before the judge or the jury as some of the factual findings will have been unaffected by the errors and factual findings that were affected will have been affected in different ways."). To that end, we have recognized that "it is virtually impossible to demonstrate prejudice as required [by *Strickland v. Washington*] without an evidentiary hearing." *State v. Blackmon*, 78 S.W.3d 322, 328 (Tenn. Crim. App. 2001) (internal quotation marks and citation omitted); *see Thompson v. State*, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997).

Our supreme court has recognized that "[c]laims of ineffective assistance of counsel are generally more appropriately raised in a petition for post-conviction relief rather than on direct appeal." *State v. Honeycutt*, 54 S.W.3d 762, 766 n.3 (Tenn. 2001). Indeed, we have repeatedly cautioned that "the practice of raising ineffective assistance of counsel claims on direct appeal is fraught with peril[.]" *Blackmon*, 78 S.W.3d at 328 (citation and internal quotation marks omitted). After all, a defendant in this circumstance "runs the risk of having the issue resolved without an evidentiary hearing which, if held, might be the only way that harm could be shown—a prerequisite for relief in ineffective trial counsel claims." *State v. Mosley*, 200 S.W.3d 624, 629 (Tenn. Crim. App. 2005) (citation and internal quotation marks omitted).

Despite this issue being important to the Defendant's appeal, the issue was not raised before the trial court in the Defendant's motion for a new trial. Consequently, no evidence was offered supporting the Defendant's Sixth Amendment claims. The Defendant did not testify, for example, and he did not call his trial counsel to testify as to why certain actions were taken or not taken. More importantly, the trial court made no findings of fact or conclusions of law that we, in the proper exercise of our appellate jurisdiction, could review under appropriate standards. *See State v. Abraham*, No. W2016-01497-CCA-R3-CD, 2017 WL 972153, at *4 (Tenn. Crim. App. Mar. 13, 2017) ("[T]he defendant's failure to raise ineffective assistance of counsel in his motion for a new trial deprived the trial judge of the opportunity to evaluate trial counsel's performance, so this Court does not have a proper record before it."), *no perm. app. filed*. We again caution, respectfully but ardently, that litigants be mindful "of the dangers of raising the issue of ineffective assistance of trial counsel on direct appeal because of the significant . . . amount of development and factfinding such an issue entails." *Kendricks v. State*, 13 S.W.3d 401, 405 (Tenn. Crim. App. 1999).

Nevertheless, because the Defendant failed to properly raise and preserve this issue in the trial court, we must conclude that the Defendant has waived plenary review of the issue in this court. For the reasons given above, we respectfully decline to review the issue for plain error. *See State v. Stephens*, No. E2023-00334-CCA-R3-CD, 2023 WL 9468295, at *4 (Tenn. Crim. App. Dec. 14, 2023), *perm. app. filed* (Tenn. Feb. 9, 2024) ("[T]he Defendant waived appellate review of his ineffective assistance of counsel claim by failing to include it in his motion for new trial. Moreover, the Defendant failed to request plain error review, and we decline to conduct such review sua sponte."). The Defendant is not entitled to relief on this ground.

### E.    MONELL LIABILITY

The Defendant further alleges that the Metropolitan Nashville Police Department and the City of Nashville are "liable under *Monell* Liability for his false imprisonment and

for violations of his constitutional rights."[5]  He further asserts that the City of Nashville and Metro are liable for "implementing unconstitutional policies[.]"  We conclude that we are without jurisdiction to consider this claim for relief.

The Tennessee Court of Criminal Appeals is an intermediate appellate court that was created by the General Assembly pursuant to its constitutional authority to ordain and establish inferior courts.  *See* Tenn. Const. art. VI, § 1; *State v. Parrish*, No. 01C01-9309-CC-00292, 1995 WL 678810, at *3 (Tenn. Crim. App. filed at Nashville, Nov. 16, 1995) (recognizing that "[t]he Court of Criminal Appeals is clearly an 'inferior court'"), *perm. app. denied* (Tenn. Apr. 1, 1996).  Pursuant to that constitutional authority, the legislature vested this court with appellate jurisdiction only, and, consequently, this court has no authority to entertain original actions except possibly in aid of its appellate jurisdiction.  Tenn. Code Ann. § 16-5-108(a); *State v. Drake*, 701 S.W.2d 604, 607 (Tenn. 1985).  Moreover, the court's appellate jurisdiction is further limited to reviewing criminal judgments and limited proceedings arising out of criminal cases.  *See* Tenn. Code Ann. § 16-5-108(a).  In other words, this court has no jurisdiction to review civil judgments or entertain original civil actions or lawsuits.  *Cf. City of McMinnville v. Hubbard*, No. M2018-00223-CCA-R3-CO, 2019 WL 719077, at *1 (Tenn. Crim. App. Feb. 20, 2019) ("Because such appeals are considered civil in nature, we are without subject matter jurisdiction to hear this appeal."), *no perm. app. filed*.

The Defendant has cited no authority showing that this court has original jurisdiction to adjudicate a *Monell* action brought by him.  Moreover, the trial court here did not adjudicate any such claim or issue a final judgment resolving that claim.  As such, because we lack any jurisdiction to consider this issue, we respectfully decline to grant relief on this basis.

## F.    FEDERAL LAWSUIT

Finally, the Defendant asserts that the "lower Federal court" abused its discretion by dismissing a federal court lawsuit to which he was a party.  From the Defendant's brief, he claims to have filed a suit in the United States District Court seeking damages for a false arrest, but the federal court dismissed the action as being untimely.  In this appeal, he seeks to have this court review and reverse that dismissal, presumably with an order from this court reinstating the case to the docket of the district court.

The Defendant does not cite any authority suggesting that a state intermediate court of appeals has jurisdiction to review the proceedings of a federal district court.  In fact, all

---

[5]    Although not cited by the Defendant, we presume the reference is to *Monell v. Dep't of Soc. Serv. of N.Y.C.*, 436 U.S. 658 (1978).

10

authority is to the contrary. *See, e.g.*, *Murray v. Town of Mansura*, 940 So. 2d 832, 837 (La. Ct. App. 2006) ("Louisiana state courts cannot consider appeals of judgments rendered by federal courts."); *Yang v. City of Chicago*, 745 N.E.2d 541, 544 (Ill. 2001) ("This court is not a court of review for federal court decisions."); *Kansas Ass'n of Priv. Investigators v. Mulvihill*, 35 S.W.3d 425, 428 (Mo. Ct. App. 2000) ("This court is without jurisdiction to review a judgment of a federal district court."); *Matter of Fitton*, 605 N.E.2d 1164, 1172 (Ind. Ct. App. 1992) ("At the outset we know that in general state courts have no power to review, in any manner, the decision of a federal court."); *Cent. Nat'l Bank v. Stevens*, 169 U.S. 432, 459 (1898) ("State courts . . . are destitute of all power to restrain either the process or proceedings in the national courts.").

But the issue is more basic than that. In Tennessee, the right to appeal is a statutory right. *See State v. Novatne*, No. M2023-00114-CCA-R3-CO, 2023 WL 8081706, at \*3 (Tenn. Crim. App. Nov. 21, 2023), *perm. app. denied* (Tenn. Apr. 11, 2024). The statute establishing the jurisdiction of this court provides that its appellate authority "shall extend to review of the final judgments of trial courts . . . ." Tenn. Code Ann. § 16-5-108(a). When this statute was adopted, no reasonable reader would have understood the phrase "trial courts" as meaning anything other than state trial courts exercising criminal jurisdiction. *See Lawson v. Hawkins County*, 661 S.W.3d 54, 59 (Tenn. 2023) ("In interpreting statutory provisions, our role is to determine how a reasonable reader would have understood the text at the time it was enacted."). Indeed, any broader reading would be inconsistent with both the statute's structure and the context in which the language is used. *See State v. Deberry*, 651 S.W.3d 918, 930 (Tenn. 2022) (including examination of statutory structure and context among the "traditional tools of statutory construction"). Because we lack jurisdiction to consider this issue, we decline to grant relief on this basis.

## CONCLUSION

In summary, we hold that the evidence is legally sufficient to sustain the Defendant's convictions for aggravated robbery. We also hold that we lack jurisdiction to entertain an original civil action or to review federal court proceedings. Because the Defendant has waived plenary review of the remaining issues and has not requested plain error review, we respectfully affirm the trial court's judgments.

_____
TOM GREENHOLTZ, JUDGE